THE STATE EX REL. SELLARDS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Sellards v. Indus. Comm.,* 108 Ohio St.3d 306, 2006-Ohio-1058.]

(No. 2005–0019—Submitted September 27, 2005—Decided March 22, 2006.)

**Per Curiam.**

{¶ 1} Temporary total disability compensation is prohibited after a claimant's condition has reached maximum medical improvement. R.C. 4123.56(A). Although one doctor assessed appellant, William E. Sellards Jr., as having reached maximum medical improvement, another physician's plan for further treatment was approved by the Industrial Commission the same day as the assessment. We must determine whether the opinion regarding maximum medical treatment is invalidated due to the physician's lack of awareness of the approved plan. We hold that it is.

{¶ 2} Sellards injured his back in an industrial accident in 1998. He was deemed to have reached maximum medical improvement of his back injury in January 2001. In November 2001, he began seeing a psychiatrist, Dr. J. T. Spare, for depression. Dr. Spare prescribed an unspecified antidepressant and initiated "supportive psychotherapy."

{¶ 3} On July 17, 2002, appellee Industrial Commission of Ohio additionally allowed Sellards's workers' compensation claim for "major depressive disorder, single episode." On October 17, 2002, Dr. Spare submitted a C–9 treatment-plan

application that sought approval, without elaboration, for psychotherapy and "medication management." That application was approved by the commission on October 22, 2002.

{¶ 4} Coincidentally, also on October 22, Sellards was examined by another psychiatrist, Dr. Allen B. Levy, concerning the extent of his psychiatric disability. After examining Sellards and thoroughly reviewing his records (which did not include Dr. Spare's treatment plan), Dr. Levy concluded that Sellards's psychiatric condition had reached maximum medical improvement:

{¶ 5} "There has been some improvement since he began medication treatment and more substantial improvement since he was awarded compensation for temporary total disability. He, nonetheless, continues to experience sufficient depression symptoms to render him disabled, and I believe this disability to be permanent. I believe he has reached MMI [maximum medical improvement]. He is unlikely to show any further improvement in his condition. * * * It is unlikely that he will experience any significant further improvement in his depression so he is at MMI and is permanently disabled. It would be useful for him to continue to receive counseling and medication management at a frequency of once every month for the next three to four months then decrease the frequency of these visits to every couple of months. It is likely that he will need indefinite care from a psychiatrist and therapist."

{¶ 6} Dr. Spare responded to Dr. Levy's report on November 26, 2002:

{¶ 7} "I have reviewed Dr. Levy's report and would certainly agree that Mr. Sellards continues to have some residual symptoms which impair his functioning. These tend to vary a bit from week to week and, at times, appear to vary independently of the situation and at times seem to be a pretty direct result of intercurrent stress. Dr. Levy points out that we have not changed treatment in the recent past. Unfortunately, much of this is because the BWC [Bureau of Workers' Compensation] or the employer continually impairs the patient's ability to have his medication paid for. We have been, to some extent, limited on the options available as Mr. Sellards consistently reports that when he takes his prescriptions to the pharmacy, he is told that they are not compensated and therefore he cannot afford to get them filled. As a consequence, we have been using office samples in an attempt to treat him but, unfortunately, many of the things that I would otherwise use are not available in that form. * * * I think with optimizing medication and continued psychotherapy, he can make additional progress."

{¶ 8} This letter contained the first mention of any problem with payment for medication. On December 23, 2002, Sellards's counsel phoned the bureau regarding prescription payment. The bureau responded with a letter the next

day indicating that an error had occurred and, as of that date, had been corrected.

{¶ 9} At about the same time, a commission district hearing officer found, based on Dr. Levy's report, that claimant had reached maximum medical improvement and therefore terminated temporary total disability compensation as of the December 18 hearing date. Sellards appealed and obtained another letter from Dr. Spare. Dated January 7, 2003, the letter stated:

{¶ 10} "Mr. Sellards continues to be symptomatic. * * * The intensity of these experiences seem [sic] to fluctuate, to some extent, and clearly there has been some improvement over baseline. However, the symptoms remain severe to moderately severe * * *. As I had previously noted, the patient persistently reports that attempts to get his prescriptions filled at the pharmacy are frustrated by the pharmacist who claims that these psychiatric items are not compensated. Mr. Sellards' antidepressant treatment has been, to some extent, limited as we have been providing him with office samples to keep him in treatment.

{¶ 11} "I know there has been some attempt to address this issue since his last visit. However, so far as I am aware, the situation has not changed.

{¶ 12} "In any case, Mr. Sellards likely would have some opportunity to benefit from alternative medication or augmentation with a mood stabilizer; however, these approaches would require closer monitoring, blood testing and the availability of medication on a continuous basis. Given the uncertainty of the situation, I have been a bit reluctant to proceed with that because there are some risks involved, particularly if the medication cannot be continuously monitored appropriately."

{¶ 13} A staff hearing officer affirmed the district hearing officer's order on February 6, 2003. She reasoned:

{¶ 14} "Although Dr. Levy does indicate that counseling and medication management should continue, he indicates it is unlikely that the claimant will experience any further improvement in his psychological condition despite that treatment. The Staff Hearing Officer further finds that although the psychological condition was not formally recognized in this claim as an allowed condition until July of 2002, the claimant has been receiving regular treatment with Dr. Spare since at least November of 2001. Although the claimant just recently reported a problem to the BWC in getting his prescriptions filled, it is noted that Dr. Spare has been providing the claimant with free medication samples to treat the allowed psychological condition."

{¶ 15} The staff hearing officer's decision prompted a third letter from Dr. Spare on February 17, 2003. The letter reviewed the history of Sellards's treatment and suggested that Sellards would have been afforded more thorough

treatment but for a delay in approving the psychiatric condition and getting Sellards's medications paid. The report, however, was vague about what specifically Dr. Spare would have done differently and what he would now do differently following approval of his treatment plan:

{¶ 16} "[H]is treatment was, to some extent, limited by inability to provide intensive treatment and limits on the medications which were available. As I previously commented, we did provide him with office samples of several antidepressants but they were incompletely effective. In such cases, augmentation strategies which involved the prescription of mood stabilizers or small doses of major tranquilizers or more typical antidepressants are often prescribed. Some of these strategies require medication which is not available as samples as well as blood monitoring which is also expensive. As a consequence, our attempts at treatment were limited and Mr. Sellards has not had all of the available aggressive treatments for his depression."

{¶ 17} Further appeal and an additional request for reconsideration were denied, generating Sellards's mandamus petition to the Court of Appeals for Franklin County. The court of appeals denied the writ after finding that the commission order was supported by evidence.

{¶ 18} This cause is now before this court on an appeal as of right.

{¶ 19} The single issue presented is an evidentiary one. Sellards challenges Dr. Levy's opinion of maximum medical improvement as premature based on Dr. Spare's contemporaneously approved treatment plan and urges its disqualification. We agree with Sellards and accordingly reverse the judgment of the court of appeals.

{¶ 20} Prior to his examination by Dr. Levy, Sellards struggled to get the treatment recommended by his treating physician, Dr. Spare, who believed that Sellards would benefit from medication and psychotherapy. The commission, in approving that treatment, obviously wanted to give Sellards the opportunity for further treatment. We believe that Sellards merits that opportunity before maximum medical improvement is assessed. Dr. Levy's opinion was premature based on the commission's contemporaneous approval of Dr. Spare's treatment program. Dr. Levy's opinion could not, therefore, serve as evidence supporting denial of temporary total disability compensation.

{¶ 21} The judgment of the court of appeals is reversed.

Judgment reversed.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

MOYER, C.J., and O'DONNELL, J., dissent.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy, and Marc J. Jaffy, for appellant.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee Industrial Commission.