DECISION
{¶ 1} Relator, Errol D. Llyod, Jr., filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order *Page 2 
terminating his temporary total disability ("TTD") compensation based upon a finding that he had reached maximum medical improvement ("MMI").
 {¶ 2} In accord with Loc.R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we grant the requested relief.
 {¶ 3} Counsel for Centimark Corporation ("Centimark") has filed objections to the magistrate's decision. Counsel for relator has filed a memorandum in response. The case is now before the court for a full, independent review.
 {¶ 4} Following his injury which was recognized for "electrical shock," relator was referred for a psychiatric evaluation due to the anxiety he was experiencing. This eventually led to relator's recognized conditions being extended to include post-traumatic stress disorder and depression disorder. He was awarded TTD compensation due to his psychological condition.
 {¶ 5} Centimark had relator evaluated by Michael E. Miller, M.D., who concluded that relator was being deceptive about a number of matters, including his chemical dependency history and reporting of symptoms.
 {¶ 6} William C. Melchior, Ed.D., was treating relator for his psychological condition and requested authorization from Centimark, as a self-insuring employer, to increase relator's treatment. Instead, Centimark filed a motion seeking to terminate the TTD compensation, based upon Dr. Miller's report. *Page 3 
 {¶ 7} A district hearing officer and subsequently a staff hearing officer granted the motion to terminate, which led to the filing of this action in mandamus.
 {¶ 8} The magistrate recommended that this termination be vacated because of the decision of the Supreme Court of Ohio, State ex rel.Sellards v. Indus. Comm., 108 Ohio St.3d 306, 2006-Ohio-1058. The magistrate's reasoning is explained in detail in the magistrate's decision. The course of treatment for relator had not yet been approved when Dr. Miller examined relator.
 {¶ 9} The new course of treatment changed the treatment from monthly to weekly. Dr. Miller was unaware of both the past treatment and the future treatment plan when he wrote his report. ApplyingSellards, Dr. Miller's report could not constitute some evidence to support a finding that relator had reached MMI.
 {¶ 10} Counsel for Centimark raises three objections to the magistrate's decision. First, Centimark complains that the C-9 approval of additional treatment is not in the record. The actual C-9 approval is not critical. The point regarding why Sellards applies is the fact the additional treatment had not yet been approved when Dr. Miller saw relator.
 {¶ 11} This objection is overruled.
 {¶ 12} The second objection is that Sellards is factually distinguishable. We do not see any significant factual distinction. This objection is overruled.
 {¶ 13} The third objection is that Dr. Miller somehow knew relator's psychological and psychiatric treatment plan. We do not see the record as supporting this assertion since Dr. Miller's report does not reflect his review of such documents as would accurately advise him of the treatment plan.
 {¶ 14} This objection is also overruled. *Page 4 
 {¶ 15} We overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we grant a writ of mandamus compelling the commission to vacate its termination of relator's TTD compensation and to reinstate the compensation.
Objections overruled; writ of mandamus granted.
BROWN and BOWMAN, JJ., concur.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered on June 29, 2007 IN MANDAMUS {¶ 16} Relator, Errol D. Lloyd, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated relator's temporary total disability ("TTD") compensation after finding that relator had reached maximum medical *Page 6 
improvement ("MMI") regarding his physical and psychological conditions, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 17} 1. Relator sustained a work-related injury on January 11, 2005, and his claim was originally allowed for "electrical shock."
 {¶ 18} 2. Relator's treating neurologist James Anthony, M.D., referred relator for a psychiatric evaluation because he was concerned that relator had extreme anxiety.
 {¶ 19} 3. Relator was seen by Stephen W. Halmi, Psy.D., who evaluated relator in August 2005. After administering certain tests, Dr. Halmi concluded that relator was suffering from post-traumatic stress disorder ("PTSD") and that, at that time, he was temporarily and totally disabled from working due solely to the effects of the PTSD and depression.
 {¶ 20} 4. Following this consultation, relator began treating with Dr. Halmi on a monthly basis. Relator also continued to treat with Dr. Anthony who continued to be of the opinion that relator's claim should be additionally allowed for psychological conditions and stressed that relator was in need of psychiatric help.
 {¶ 21} 5. William C. Melchior, Ed.D., examined relator's record, including a report from Dr. Melvin Gale who had opined that relator suffered from a mild lifelong generalized anxiety disorder. In response, Dr. Melchior stated that relator suffers from PTSD and depressive disorder-NOS which are both directly related to his January 2005 industrial accident. Dr. Melchior concluded as follows:
 * * * [T]his psychologist recommends Mr. Lloyd's claim be amended to include the above Post Traumatic Stress Disorder and Depressive Disorder-NOS so that he be *Page 7 
afforded the opportunity to receive appropriate treatment. Such treatment would include psychopharmacology and outpatient individual psychotherapy to facilitate the claimant's management of his anxiety and depression.
 {¶ 22} 6. In August 2005, relator filed a motion requesting that his claim be additionally allowed for PTSD and depressive disorder.
 {¶ 23} 7. Relator's motion was heard before a district hearing officer ("DHO") on November 9, 2005. The DHO determined that relator's claim should be additionally allowed for "post-traumatic stress disorder and depressive disorder," based upon the reports of Drs. Melchior, Halmi, Hughes, and the office records of Dr. Anthony. Further, the DHO determined that relator was entitled to TTD compensation as he was unable to return to and perform the duties of his former position of employment from August 12 through November 11, 2005.
 {¶ 24} 8. Respondent Centimark Corporation ("employer") appealed and the matter was heard before a staff hearing officer ("SHO") on March 31, 2006. The SHO affirmed the prior DHO order which additionally allowed relator's claim for the psychiatric conditions and awarded TTD compensation.
 {¶ 25} 9. Dr. Melchior certified an ongoing period of TTD compensation through an estimated return-to-work date of May 12, 2006.
 {¶ 26} 10. Thereafter, the employer had relator examined by Michael E. Miller, M.D. In his March 22, 2006 report, Dr. Miller examined the relevant psychiatric reports and notes, administered certain testing, and ultimately concluded as follows:
 Errol Lloyd presents as a gentleman intent upon portraying himself as severely ill, yet there are a series of concerns which call his reliability into question: *Page 8 
 [One] He lied about his chemical dependency history.
 [Two] He lied about his legal history (DUI arrests).
 [Three] His MMPI-2 interpreted by Dr. Halmi was invalid secondary to over-reporting.
 [Four] His MMPI-2 interpreted by Dr. Modrail was invalid. She used a number of subscales to illustrate his deceitful reporting patterns.
 [Five] The VIP was invalid due to inconsistent reporting.
 Mr. Lloyd has reached maximum medical recovery. His condition is stable, though his deceitful presentation significantly calls into question whether he can be trusted to accurately and honestly report symptoms.
 There are no psychological restrictions relative to his ability to perform light duty. I see no reason for psychological disability and support a return to any form of employment, including his previous position of employment. The use of alprazolam, the only psychoactive medication currently prescribed, is not recommended. This opinion is based on a combination of his chemical dependency history, lack of veracity relative to reporting symptoms, and potential impact on coordination and mental clarity.
 {¶ 27} 11. On April 12, 2006, Dr. Melchior sought authorization from the employer to provide psychiatric treatment to relator. Specifically, Dr. Melchior requested individualized psychotherapy on a weekly basis for six months.
 {¶ 28} 12. Dr. Melchior completed another C-84 certifying TTD compensation through an estimated return-to-work date of August 12, 2006. Dr. Melchior indicated that relator's allowed psychological condition had not reached MMI and indicated that relator had only been seen on a monthly basis due to his ability to pay for treatment. Dr. Melchior indicated that weekly sessions would begin.
 {¶ 29} 13. On April 13, 2006, the employer filed a motion seeking to terminate relator's TTD compensation on the basis that Dr. Miller had opined that relator's allowed psychological conditions had reached MMI. *Page 9 
 {¶ 30} 14. The employer's motion to terminate relator's TTD compensation was heard before a DHO on May 22, 2006. The DHO acknowledged that relator was currently receiving TTD compensation based upon C-84 reports submitted by Dr. Melchior. The DHO then terminated relator's TTD compensation based upon the report of Dr. Miller.
 {¶ 31} 15. Relator appealed and submitted additional evidence in the form of a letter dated June 14, 2006 from his treating physician, Dr. Melchior. Dr. Melchior's letter specifically addressed Dr. Miller's conclusion that relator had reached MMI. In that letter, Dr. Melchior stated:
 * * Mr. Lloyd Jr.'s claim was just recently allowed for the above conditions as of 4/6/2006. Up until his claim was approved, Mr. Lloyd Jr. was seen only on a monthly basis. Currently he is being seen on a weekly basis to facilitate management of his depression and related symptoms: anhedonia, change in appetite, feelings of worthlessness and [g]uilt, decreased concentration and fatigue. Additional goals include facilitating the claimants coping skills to manage the Post Traumatic Stress and related symptoms: avoidance behaviors, flashbacks, nightmares, and anxiety.
 In addition to the outpatient psychological psychotherapy, this psychologist has submitted a C-9 for Mr. Lloyd Jr. to see Dr. DeSilva for medical consult and medical management of his psychopathology. The C-9 has not yet been approved although it was submitted in April of 2006. The combination of medical management of his Depression and Post Traumatic Stress Disorder, along with his outpatient psychotherapy will facilitate Mr. Lloyd Jr.'s progress. Much further improvement is expected.
 Summarily, Mr. Lloyd Jr. has just recently begun outpatient psychotherapy on an intensive weekly basis. Additionally, the claimant is to see the psychiatrist, Dr. DeSilva, for consult and medical management. Mr. Lloyd is very early in the treatment process. Therefore, the psychologist opines Mr. Lloyd Jr. has not reached the status of maximum medical improvement. *Page 10 
 {¶ 32} 16. Relator's appeal was heard before an SHO on July 17, 2006. The SHO affirmed the prior DHO order and found that relator had reached MMI based upon the March 22, 2006 report of Dr. Miller.
 {¶ 33} 17. Relator filed an appeal from the SHO order specifically noting that relator's request for individual psychotherapy was not approved by the employer until May 11, 2006, approximately two months after Dr. Miller's examination wherein he determined relator had reached MMI.
 {¶ 34} 18. Relator's appeal was refused by order of the commission mailed August 5, 2006.
 {¶ 35} 19. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. *Page 11 
 {¶ 37} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 38} MMI is defined in Ohio Adm. Code 4121-3-32(A)(1) as follows:
 "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or psychological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.
 {¶ 39} Relator makes two arguments. First, relator contends that because Dr. Miller examined him prior to the date that his claim was formerly allowed for PTSD and depressive disorder, his report cannot constitute some evidence upon which the commission could rely. Relator contends, in part, that he was not eligible to receive any treatment for these newly allowed psychological conditions until the final administrative order allowing them. Relator cites R.C. 4123.511(I) which provides that no medical benefits are payable until the earlier of either the issuance of the SHO's order or the date of the final administrative or judicial determination. In the instant case, the SHO's order allowing relator's psychiatric conditions occurred on March 31, 2006, nine days after relator was examined by Dr. Miller. Relator also contends that Dr. Miller could not *Page 12 
have rendered a valid opinion as to whether or not he had reached MM I because Dr. Miller was not aware of the actual treatment relator had received, nor was he aware of the treatment being requested. A review of Dr. Miller's March 22, 2006 report reveals the records which Dr. Miller reviewed. None of those records formerly address the actual treatment which relator had been receiving, nor do any of those records indicate the treatment which Dr. Melchior was requesting. Relator cites State exrel. Sellards v. Indus. Comm., 108 Ohio St.3d 306, 2006-Ohio-1058, in support of this argument.
 {¶ 40} In response, the commission argues that the employer's March 16, 2006 letter to Dr. Miller provided enough information regarding relator's treatment so that Dr. Miller could actually address the issue of MMI. However, the only information which that letter provided to Dr. Miller was that relator "has treated with a psychologist since August, a period of almost eight months." Nothing in this letter addressed the frequency of those visits.
 {¶ 41} The employer responds by citing State ex rel. Vance v.Marikis (1999), 86 Ohio St.3d 305, and argues that the Supreme Court of Ohio has found that the mere fact that a doctor finds a claimant's condition to be at MMI prior to the final allowance of the commission does not preclude the commission from relying on that doctor's report in finding MMI.
 {¶ 42} For the reasons that follow, the magistrate rejects the arguments of both the commission and the employer and recommends that this court issue a writ of mandamus.
 {¶ 43} Addressing first the employer's argument, the magistrate finds that the court's decision in Vance is not dispositive of the instant matter. In Vance, the *Page 13 
claimant's workers' compensation claim was originally allowed for "pulled tendons-muscles in entire back, chip[ped] bone side of right foot." Id. at 306. Claimant was examined by Dr. Purewal in September 1992. At that time, Dr. Purewal examined the claimant's entire back, including the thoracic spine region, and determined that she had reached MMI and was able to return to her former position of employment as a secretary. Thereafter, in December 1992, the claimant sought to have her claim additionally allowed for other conditions, including thoracic sprain. Ultimately, the commission allowed claimant's claim for thoracic sprain, but denied her request for TTD compensation based upon Dr. Purewal's September 1992 report. The SHO specifically noted that the claim had previously been allowed for the entire back and that the treatment claimant had received had included treatment for these additionally allowed conditions.
 {¶ 44} The claimant filed a mandamus action in this court which was denied. On appeal to the Supreme Court of Ohio, the commission's reliance upon the report of Dr. Purewal was upheld by the Supreme Court. The Supreme Court specifically noted that Dr. Purewal had examined claimant's entire back, including the thoracic region, and had commented on the complaints of pain which prompted claimant to seek recognition of the additional conditions. The court distinguished claimant's case fromState ex rel. Richardson v. Quarto Mining Co. (1995), 73 Ohio St.3d 358. In that case, the examining physician had considered only the allowed condition of lumbosacral strain in assessing MMI. The physician's examination did not encompass the other more serious allowed condition involving central disc herniation at L4-5 and L5-S1, which resulted in *Page 14 
the court declaring that report did not constitute some evidence to support the denial of TTD compensation.
 {¶ 45} Because the magistrate finds that the problem with the commission's reliance upon the report of Dr. Miller does not relate to the time at which that report was written, the magistrate finds thatVance is not dispositive.
 {¶ 46} Both relator and the commission's arguments will be addressed together. Relator asserts that Sellards is dispositive of this case while the commission argues that Sellards is not applicable. For the reasons that follow, it is this magistrate's conclusion thatSellards is dispositive of this case.
 {¶ 47} In Sellards, the claimant injured his back in 1998. His back condition was found to have reached MMI in January 2001. In November 2001, claimant began seeing a psychiatrist. In July 2002, claimant's claim was additionally allowed for "major depressive disorder, single episode." Id. at ¶ 3. In October 2002, claimant's doctor submitted a C-9 treatment plan seeking approval for psychotherapy and medication. That application was approved by the commission on October 22, 2002.
 {¶ 48} Also on October 22, 2002, claimant was examined by another psychiatrist, Dr. Levy, concerning the extent of his psychiatric disability. After examining claimant and reviewing his records, which did not include the recently requested treatment plan, Dr. Levy concluded that his psychiatric condition had reached MMI.
 {¶ 49} In response to Dr. Levy's report, claimant's physician stated in a report dated November 26, 2002, that the reason there had been no change in claimant's treatment was because the Ohio Bureau of Workers' Compensation or the employer *Page 15 
was refusing to pay for claimant's medication. He concluded that with the proper medication and continued psychotherapy, claimant could make progress.
 {¶ 50} Shortly thereafter, a DHO relied upon Dr. Levy's report, found that claimant's allowed psychiatric condition had reached MMI, and terminated his TTD compensation. Claimant appealed, again indicating that he had not had the psychiatric treatment and medication necessary. In February 2003, an SHO affirmed the prior DHO order based upon the report of Dr. Levy. Claimant's further appeal was refused and he filed a mandamus action. This court denied his request for a writ of mandamus after finding that the commission's order was supported by some evidence.
 {¶ 51} On appeal, the Supreme Court of Ohio reversed this court and granted a writ of mandamus as follows:
 The single issue presented is an evidentiary one. Sellards challenges Dr. Levy's opinion of maximum medical improvement as premature based on Dr. Spare's contemporaneously approved treatment plan and urges its disqualification. We agree with Sellards and accordingly reverse the judgment of the court of appeals.
 Prior to his examination by Dr. Levy, Sellards struggled to get the treatment recommended by his treating physician, Dr. Spare, who believed that Sellards would benefit from medication and psychotherapy. The commission, in approving that treatment, obviously wanted to give Sellards the opportunity for further treatment. We believe that Sellards merits that opportunity before maximum medical improvement is assessed. Dr. Levy's opinion was premature based on the commission's contemporaneous approval of Dr. Spare's treatment program. Dr. Levy's opinion could not, therefore, serve as evidence supporting denial of temporary total disability compensation.
Id. at ¶ 19-20. *Page 16 
 {¶ 52} In the present case, relator's treating physician, Dr. Anthony, continued to state that relator needed psychiatric help. Dr. Anthony referred relator to Dr. Melchior who concluded that relator had PTSD and recommended treatment. Relator was then seen by Dr. Miller who issued a report dated March 22, 2006. In that report, Dr. Miller listed all of the evidence which he reviewed before reaching his conclusion. That list of evidence does not include any reports from Dr. Melchior, claimant's attending psychologist. Although Dr. Miller noted, on page four of his report, that he reviewed C-84s from Dr. Melchior requesting treatment, the only C-84s in the record post-date Dr. Miller's report. Further, nowhere in that report does Dr. Miller indicate that he is aware that Dr. Melchior has requested a specific psychiatric plan for relator which has not yet occurred in part because of the delay in having relator's claim allowed for PTSD and depressive disorder and because of a delay on the part of the employer in response to Dr. Melchior's request for treatment. Relator's C-9 request for treatment was ultimately approved by the commission in May 2006, two months after Dr. Miller's report.
 {¶ 53} Just as in Sellards, the course of treatment Dr. Melchior sought for relator had yet to be approved, had not begun at the time Dr. Miller examined relator, and was not included in the list of records which Dr. Miller reviewed in determining that relator's allowed psychiatric conditions had reached MMI.
 {¶ 54} In his report, Dr. Miller indicated that relator stated he had been seeing Dr. Melchior once a month for the past eight months. The C-9 requested individual treatment once a week for the next six months. That request for treatment was ultimately approved. There is a big difference between weekly and monthly treatment. Further, Dr. Melchior indicated that he expected much improvement following adequate *Page 17 
treatment. Because Dr. Miller was not aware of the actual treatment relator had received and was not aware of the treatment plan which Dr. Melchior requested, the magistrate concludes that Dr. Miller's opinion was premature.
 {¶ 55} Based on the foregoing, the magistrate finds that the report of Dr. Miller does not constitute some evidence upon which the commission could rely in finding that relator's allowed psychiatric conditions had reached MMI because Dr. Miller was not aware of the actual treatment relator had received and was not aware of the pending treatment request, this court should issue a writ of mandamus ordering the commission to vacate its order which found that relator's allowed psychiatric conditions had reached MMI and terminating his TTD compensation and should issue a new order reinstating that compensation. *Page 1