[Cite as *State ex rel. Fitzgerald v. Ohio Police & Fire Pension Fund Bd. of Trustees*, 2015-Ohio-5079.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ramona K. Fitzgerald, | : | |
| Relator, | : | |
| v. | : | No. 14AP-968 |
| Board of Trustees of Ohio Police & Fire Pension Fund and Ohio Police & Fire Pension Fund, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 8, 2015

*Law Offices of Gary A. Reeve, LLC,* and *Gary A. Reeve,* for relator.

*Michael DeWine*, Attorney General, *John J. Danish,* and *Mary Therese J. Bridge*, for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator Ramona K. Fitzgerald initiated this original action requesting a writ of mandamus ordering the Ohio Police and Fire Pension Fund ("OP&F") and its board of trustees ("board") (collectively "respondents") to accept the election to enroll form Fitzgerald submitted on February 10, 2011, regarding OP&F's deferred retirement option plan ("DROP").

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate rendered a decision that includes findings of fact and conclusions of law. The magistrate's decision, which is

appended hereto, recommends this court deny Fitzgerald's request for a writ of mandamus. Fitzgerald filed objections to the magistrate's decision. The matter is now before the court for our independent review. For the reasons that follow, we sustain Fitzgerald's objections to the extent she argues the magistrate erred in finding respondents did not abuse their discretion by rejecting her February 10, 2011 election form, and we therefore grant the requested writ of mandamus.

## I. Facts and Procedural History

{¶ 3} On February 10, 2011, Fitzgerald attempted to enroll in OP&F's DROP program by completing and submitting the required OP&F election to enroll in DROP form ("election form"). The election form Fitzgerald submitted had been changed in multiple ways through the use of a white correction fluid ("whiteout"). The election form had been changed to correct the designation of Fitzgerald's marital status at the time of the election from "single" to "divorced," to change Fitzgerald's DROP payment plan selection from indicating she wanted to select a payment plan to indicate she did not want to select a payment plan, and to omit beneficiary information. The record contains a letter dated February 11, 2011, addressed to "Ramona Boyd," indicating OP&F had received Fitzgerald's election form, but that it was not accepted because the form was "incomplete." Fitzgerald denies receiving the February 11, 2011 letter, which was addressed to her former name. On April 15, 2013, general counsel for OP&F sent a letter to Fitzgerald further explaining why she was not enrolled in DROP. General counsel indicated that Fitzgerald's February 10, 2011 election form was not "fully and properly completed" because it had been "altered." The next week, on April 24, 2013, Fitzgerald completed and submitted a new election form to OP&F. Like the previously submitted election form, on the April 24, 2013 election form, Fitzgerald's marital status was changed from "single" to "divorced" using whiteout. This was the only change made to the April 24, 2013 election form. OP&F accepted the new election form, and, by letter dated July 18, 2013, informed Fitzgerald that she was enrolled in the DROP program effective April 28, 2013.

{¶ 4} In November 2014, Fitzgerald filed her complaint in mandamus. The magistrate rendered his decision in June 2015, and Fitzgerald timely filed objections to the decision.

## II.  Objections to the Magistrate's Decision

{¶ 5}  Fitzgerald sets forth the following objections to the magistrate's decision:

[1.] It failed to address whether why Fitzgerald's clearly expressed wishes regarding parameters for joining DROP program represented by the February 10, 2011 election form, need not be carried out;

[2.] It failed to set forth and define any fiduciary duty owed by the Respondents (collectively "Fund") to Fitzgerald in the treatment of the February 10, 2011 DROP program election form, and how that fiduciary duty must be weighed against the Fund's discretion; and,

[3.] It set forth as a major reason for supporting the denial of benefits a reason not set forth by the Fund in the April 15, 2013 letter that referred to as the "final written decision" being appealed in this action.

## III.  Discussion

{¶ 6}  Because they are interrelated, we will address together Fitzgerald's three objections.  Fitzgerald's first objection asserts the magistrate did not properly consider the fact that her intentions regarding the DROP program were clearly set forth in the February 10, 2011 election form.  Fitzgerald's second objection asserts the magistrate erred in not finding that respondents' fiduciary duty to her required respondents to accept the February 10, 2011 election form and enroll her in the DROP program based on that submission.  Fitzgerald's third objection alleges the magistrate erroneously fabricated a reason for the rejection of her February 10, 2011 election form that was not set forth by respondents.   By all three of her objections, Fitzgerald generally challenges the magistrate's decision that this court deny her request for a writ of mandamus ordering respondents to accept her February 10, 2011 election form regarding the DROP program.

### A.  Applicable Law

{¶ 7}  In order for a court to issue a writ of mandamus, a relator must show a clear legal right to the requested relief, that the respondent has a clear legal duty to provide such relief, and that there is a lack of an adequate remedy in the ordinary course of law. *See, e.g., State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593.  "As long as there is sufficient evidence to support [a] retirement-system

board's decisions, we will not disturb them." *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, ¶ 9. But a clear legal right exists when a retirement board abuses its discretion by entering an order which is not supported by "some evidence." *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990). "An abuse of discretion reflects an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Sawyer v. Cendroski*, 118 Ohio St.3d 50, 2008-Ohio-1771, ¶ 11.

{¶ 8} The Ohio state retirement systems, including OP&F, are creatures of statute and "can only act in strict accordance with their enabling schemes." *Ohio Assn. of Pub. School Emps. v. School Emps. Retirement Sys.*, 10th Dist. No. 04AP-136, 2004-Ohio-7101, ¶ 23, citing *State ex rel. Horvath v. State Teachers Retirement Bd.*, 83 Ohio St.3d 67, 74 (1998). However, when considering the extraordinary writ of mandamus, a court must defer to the retirement system's interpretation of its own rules and statutes so long as the interpretation is reasonable. *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 10th Dist. No. 12AP-245, 2013-Ohio-2513, ¶ 12, citing *State ex rel. Gill v. School Emps. Retirement Sys. of Ohio*, 121 Ohio St.3d 567, 2009-Ohio-1358, ¶ 28-29. *See McAuliffe v. Bd. of Pub. Emp. Retirement Sys. of Ohio*, 93 Ohio App.3d 353, 360 (10th Dist.1994) ("[W]e should pay due deference to a reasonable construction by an administrative agency interpreting its own rule.").

{¶ 9} R.C. 742.43 requires the board to establish and administer a DROP and to adopt rules to implement the statutes governing DROP. To make an election to participate in DROP, an eligible member of OP&F "shall complete and submit" to OP&F "a form prescribed by [OP&F]." R.C. 742.44. Pursuant to the mandate of R.C. 742.43, the board has adopted rules to implement DROP. *See* Ohio Adm.Code Chapter 742-4. As pertinent here, pursuant to Ohio Adm.Code 742-4-01(B), a "DROP participant" is "an eligible member who files the election (as hereinafter defined) with OP&F and the election has been fully completed and properly completed by the member." This rule defines "election" as "the election form that OP&F requires in order for a member to participate in DROP, as such form may be amended or modified from time to time by OP&F. For those elections that have been filed with OP&F, it shall also mean the fully and properly completed required election that is signed by the member." Ohio Adm.Code 742-4-01(F).

**B. The Election Form**

{¶ 10} Pursuant to R.C. 742.44, OP&F has made available a four-page form captioned "ELECTION TO ENROLL IN DROP (Deferred Retirement Option Plan)" (the election form).  The election form contains the following instructions directly below the form's title:

> Please print in ink or type all entries except signatures. To apply for DROP, you must submit this completed and notarized form to OP&F. OP&F will acknowledge receipt of your application within 10 business days of receipt. Please note that filing this form does not guarantee DROP participation. All applications will be subject to a determination of eligibility by OP&F.  Since OP&F will audit your service credit, you will be notified as to whether or not you meet the DROP eligibility requirements.  OP&F will not accept this form if it is incomplete or the signatures in Sections D – G have been faxed, photocopied or scanned. This entire form (pages 1-4) must be on file with OP&F and contain original signatures.

Section A of the form requires the applying member to provide his or her identifying information, including his or her name, address, date of birth, and marital status.  Section B of the form is captioned "Payment plan selection" and instructs the member to indicate whether he or she wishes to select a DROP payment plan by checking the appropriate box. "I do not want to select a payment plan" is preprinted on the form next to the first box in Section B.  "I do want to select a payment plan" is preprinted on the form next to the second box in Section B.  Section C of the form concerns DROP payment plan beneficiaries, which is pertinent only if the member chooses to select a payment plan. Section D is captioned "Member signature and acknowledgement," and that section generally outlines the terms of a member's election to participate in DROP and provides space for the electing member's signature.  Section E of the form is captioned "Notary Public requirement for member signature and acknowledgement" and provides space for a notary to sign upon the member acknowledging the form.  Sections F and G of the form concern spousal consent and are not relevant here.

### C. Analysis

{¶ 11} Fitzgerald argues it was unreasonable for respondents to reject her February 10, 2011 election form because the form clearly expresses her wishes regarding the DROP program. In support of this argument, Fitzgerald cites *Poliseno v. Mitchell*, 10th Dist. No. 09AP-1001, 2010-Ohio-2615. Respondents argue they reasonably rejected the form at issue because it had been altered in multiple areas. According to respondents, the February 10, 2011 election form was not "fully and properly completed" as required by the applicable administrative rules. Based on the arguments and facts presented, the issue is whether it was an abuse of discretion for respondents to conclude that Fitzgerald's use of whiteout to make changes to the election form, prior to its submission to OP&F, rendered the form not "fully and properly completed" as required by the applicable administrative rules. We find it was unreasonable for respondents to reject Fitzgerald's February 10, 2011 election form on the basis the form had been altered prior to its submission to OP&F.

{¶ 12} Contrary to Fitzgerald's suggestion, *Poliseno* is not directly on point; however, that case does provide some guidance. In *Poliseno*, the issue was whether the Ohio Public Employees Retirement System ("OPERS") had exceeded its discretion by accepting a beneficiary designation form when the intended beneficiary's first and last name were provided in the incorrect order and a scribe had attempted to correct the mistake to comply with the form instructions. *Id.* at ¶ 17. OPERS initially rejected the form, and then later accepted it upon determining that the alteration "was minor and the member[']s intention was clear." *Id.* at ¶ 4-5, 19. This court noted that "[u]nder such circumstances, OPERS' strict application of a zero tolerance policy itself arguably would be arbitrary and capricious." *Id.* at ¶ 19. This court concluded that OPERS' acceptance of the beneficiary designation form was within its discretionary authority to find the form "duly executed" pursuant to the applicable statutory scheme. *Id.* at ¶ 13, 20.

{¶ 13} In contrast to *Poliseno*, this appeal concerns the rejection of a retirement fund form that had been altered prior to its submission. However, like *Poliseno*, this case implicates the concept of a "zero tolerance policy" requiring the rejection of a form even if the member's intent is clear. There is no doubt that an election form with markings or attempted corrections that do not clearly indicate the required information or selections

would not be fully and properly completed. But that is not what occurred here. Fitzgerald's choice not to select a payment plan as part of her enrollment in DROP is clear based on the use of the whiteout as to the box beside "I do want to select a payment plan" and the mark over the box beside "I do not want to select a payment plan." The form indicates that if the member selects the option not to select a payment plan, the member is directed to "NOT complete Sections C, F and G of this form." If the member wishes to select a payment plan, Section C includes spaces for the designation of DROP payment plan beneficiaries. Consistent with the change as to Fitzgerald's choice not to select a payment plan, whiteout was used to remove the designation of a DROP payment plan beneficiary, including the beneficiary's social security number and date of birth. That is, by changing her selection to indicate she did not want to select a payment plan, Fitzgerald's removal by whiteout of the beneficiary name and associated information was consistent with the instructions on the form to not complete Section C if the member did not wish to select a payment plan.

{¶ 14} We are unpersuaded by both the rationale given by respondents for the rejection of Fitzgerald's February 10, 2011 election form, and the additional reasoning introduced by the magistrate to support the rejection. The initial letter of rejection apparently sent to Fitzgerald advised her to be "careful to avoid crossing out or whiting out your selections." (Feb. 11, 2011 OP&F letter.) General counsel for the fund indicated the form was rejected as not fully and properly completed because it was altered. The general counsel's letter to Fitzgerald reflects a zero tolerance policy—any alterations render a form not "fully and properly completed," even if the intent of the member is clear and unmistakable. The magistrate reasoned that respondents reasonably viewed the alterations in Sections B and C to be significant as they concern substantive and impactful changes. In contrast, only changing the marital status marking in the member identification section (Section A) was arguably not significant because it did not involve Fitzgerald's selection of impactful choices as to her enrollment in DROP. The magistrate posits that, although not stated by the general counsel, Fitzgerald's use of whiteout "creates a legitimate concern that relator may not have been adequately informed when she prepared the form." (Magistrate's Decision, ¶ 73.) The magistrate essentially found

that respondents reasonably imposed a zero tolerance policy as to any alterations relating to substantively significant selections on the election form.

{¶ 15} Contrary to the reasoning of respondents and the magistrate, nothing in the statutory scheme, the applicable rules, or the election form itself, suggests that for an OP&F election form to be fully and properly completed it must have no changes through the use of whiteout upon being submitted. The election form contains detailed instructions for its proper completion, including emphasizing that only original signatures are accepted. It also requires the member's signature to be notarized. Noticeably absent from the form is any directive or even suggestion that a member cannot make changes to the form prior to submitting it to OP&F. Nothing in the controlling statutes and rules precludes a member from changing her mind prior to submitting an election form and taking steps to change her markings on the form to ensure her selections are clear upon submission.

{¶ 16} In the final analysis, we conclude respondents abused their discretion in not accepting Fitzgerald's February 10, 2011 election form. It was unreasonable for respondents to reject the form on the basis there had been changes to the form prior to its submission because Fitzgerald's intent regarding all pertinent information was clearly presented on the submitted form and because the enabling statutes and applicable rules do not authorize such a rejection.

## IV. Disposition

{¶ 17} Based on the foregoing, we sustain Fitzgerald's objections to the magistrate's decision to the extent she argues the magistrate erred in finding respondents did not abuse their discretion when they rejected Fitzgerald's February 10, 2011 election form. We adopt the factual findings of the magistrate, but we reject the magistrate's conclusions of law. Because respondents' rejection of Fitzgerald's form constituted an abuse of discretion, Fitzgerald's request for a writ of mandamus is granted. OP&F and the board are directed to accept Fitzgerald's election form as having been filed on February 10, 2011.

*Objections sustained; writ granted.*

TYACK and HORTON, JJ., concur.

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Ramona K. Fitzgerald,          :

            Relator,                    :

v.                                                    :                    No. 14AP-968

Board of Trustees of Ohio Police &           :          (REGULAR CALENDAR)
Fire Pension Fund and Ohio Police &
Fire Pension Fund,                            :

            Respondents.               :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 24, 2015

---

*Law Offices of Gary A. Reeve, LLC,* and *Gary A. Reeve,* for relator.

*Michael DeWine*, Attorney General, and *John J. Danish,* for respondents.

---

### IN MANDAMUS

{¶ 18} In this original action, relator, Ramona K. Fitzgerald, requests a writ of mandamus ordering respondent, Ohio police and fire pension fund ("OP&F" or "fund"), and the OP&F board of trustees ("board"), to accept the election form Fitzgerald submitted on February 10, 2011 regarding the deferred retirement option plan.

Findings of Fact:

{¶ 19} 1. Pursuant to R.C. 742.43, the board shall establish and administer a deferred retirement option plan ("DROP").

{¶ 20} 2. Pursuant to R.C. 742.44, to make an election to participate in DROP, an eligible member of the fund "shall complete and submit" a form prescribed by the fund.

{¶ 21} 3. Pursuant to R.C. 742.44, OP&F provides a four-page form captioned "ELECTION TO ENROLL IN DROP (DEFERRED RETIREMENT OPTION PLAN)."

{¶ 22} The form is divided into six sections.  Pertinent here are the four sections designated sections A through E.

{¶ 23} Above Section A, the following preprinted instructions provide:

> Please print in ink or type all entries except signatures. To apply for DROP, you must submit this completed and notarized form to OP&F. OP&F will acknowledge receipt of your application within 10 business days of receipt. Please note that filing this form does not guarantee DROP participation. All applications will be subject to a determination of eligibility by OP&F. Since OP&F will audit your service credit, you will be notified as to whether or not you meet the DROP eligibility requirements. OP&F will not accept this form if it is incomplete or the signatures in Sections D - G have been faxed, photocopied or scanned. This entire form (pages 1-4) must be on file with OP&F and contain original signatures.

{¶ 24} Section A is captioned "Member Information."  In Section A, the applicant is asked to provide her name and address.  On the form at issue, "Ramona K. Fitzgerald" is written by hand as the applicant's name.  The applicant's address is written "7723 Sherridon Drive, Blacklick, Ohio, 43004."

{¶ 25} Also, the applicant is asked to mark one of four boxes that describes "[m]arital status at time of application."  There is a box aside "Single," "Married," "Divorced," and "Widowed."

{¶ 26} On the form relator submitted to OP&F on February 10, 2011, it appears that the "Single" box was whited out using white correction fluid and the box was redrawn without a mark to show that the "Single" box is intended to be unmarked.

{¶ 27} The box aside "Divorced" is marked by an X placed over the box.

{¶ 28} 4. Section B of the form is captioned "Payment plan selection."  In Section B, the applicant is instructed to "[c]hoose whether or not you want to select a payment plan by checking the box next to your selection below."

{¶ 29} Below the instructions for Section B, two boxes are provided. "I do not want to select a payment plan" is preprinted on the form aside the first box.

{¶ 30} "I do want to select a payment plan" is preprinted on the form aside the second box.

{¶ 31} On the form at issue in Section B, it appears that the second box was whited out using white correction fluid and the box was redrawn without a mark to show that the second box is intended to be unmarked.

{¶ 32} The first box is marked with an X placed over the box.

{¶ 33} 5. Section C of the form at issue is captioned "DROP payment plan beneficiaries." The form permits the applicant to designate up to four beneficiaries designated as "Beneficiary #1" through "Beneficiary #4."

{¶ 34} Under "Beneficiary #1," the form permits the applicant to enter the beneficiary's name, address, social security number, and date of birth. On the form at issue, it appears that the spaces provided for the beneficiary's name, social security number, and date of birth were whited out using white correction fluid to indicate that no beneficiary is designated.

{¶ 35} All the spaces provided for a "Beneficiary #2" through "Beneficiary #4" are left blank in the form at issue.

{¶ 36} 6. Section D of the form is captioned "Member signature and acknowledgement." Section D provides spaces for the "Member's signature" and "Date of signature." On the form at issue, the signature of Ramona K. Fitzgerald appears. Also, the signature is dated "02/10/11."

{¶ 37} 7. Section E of the form, is captioned "Notary Public requirement for member signature and acknowledgement." The form at issue was notarized on February 10, 2011.

{¶ 38} 8. On February 10, 2011, relator filed with OP&F the form as described above.

{¶ 39} 9. The record contains a letter dated February 11, 2011 from OP&F Transactions Specialist, Yvette Kellam. The letter is addressed as follows:

> Ramona Boyd
> 7723 Sherridon Dr.

Blacklick, OH  43004-8178

10.  The letter states:

The Ohio Police & Fire Pension Fund ("OP&F") is in receipt of your Election to Enroll in DROP (Deferred Retirement Option Plan). In reviewing your form, we noticed that your selection has been altered. OP&F cannot accept your application because it is incomplete. To avoid any processing delays, please complete the enclosed Election to Enroll in DROP, being careful to avoid crossing out or whiting out your selections, and return the notarized form to our office as soon as possible.

{¶ 40} 10.  According to relator, she never received the February 11, 2011 letter.

{¶ 41} 11.  Earlier, on January 29, 2001, relator completed a written request from OP&F's customer service department addressed to "Ramona Boyd."  The request asked relator to provide her name and current address, and to sign and date the document.

{¶ 42} On the OP&F request, relator gave her name as Ramona K. Fitzgerald and her current address as:  "7723 Sherridon Trail Drive, Blacklick, Ohio, 43004."

{¶ 43} The document was signed by relator as Ramona K. Fitzgerald and dated January 29, 2001.

{¶ 44} 12.  Earlier on January 8, 2001, relator completed a form provided by the City of Columbus, Division of Fire captioned "Personnel Record Change."  On the form, "Ramona K. Fitzgerald" indicates by her mark that, effective November 22, 2000, she has had a change in her marital status to "divorced."  She also indicated a change in her address to:  "7723 Sherridon Trails Dr., Blacklick, Ohio, 43004."

{¶ 45} 13.  The record contains a letter to OP&F dated September 18, 2012 from Ramona K. Fitzgerald.  In the letter, relator states that she is enclosing a copy of her decree of divorce and that she is requesting OP&F to change all records to reflect her current name.  The enclosed decree of divorce was issued by the Franklin County Court of Common Pleas, Division of Domestic Relations.  The decree acknowledges a November 22, 2000 court hearing and provides that relator "shall be restored to her former name of Ramona K. Fitzgerald."

{¶ 46} 14.  Apparently, on March 18, 2013, relator visited OP&F offices to inquire as to why she was not enrolled in the DROP program.

{¶ 47} 15. By letter dated April 15, 2013, via certified mail, return receipt requested, relator was informed by OP&F general counsel Mary Beth Foley:

> I am writing in response to your inquiry as to why you are not enrolled in the Deferred Retirement Option Plan ("DROP").
> Ohio Revised Code Section 742.44 provides that, to make a DROP election, an eligible member must complete and submit to OP&F "a form prescribed by the fund." Rule 742-4-01(E) [sic], of the Ohio Administrative Code provides that a DROP "election" means the "*fully and properly completed required election that is signed by the member."* Emphasis added.
>
> According to our records, you submitted an *Election to Enroll in DROP* form to OP&F on February 10, 2011. A copy of this form is enclosed for your reference. OP&F staff sent a letter to you on February 11, 2011 to inform you that your DROP election form had been altered and that, consequently, you would need to complete and submit a new DROP election form to OP&F. I have enclosed a copy of OP&F's letter for your reference. However, OP&F did not, and has not, received a fully and properly completed *Election to Enroll in DROP* form from you. Therefore, you have not been enrolled in DROP and are not enrolled in DROP.
>
> When you visited our office and raised this issue on March 18, 2013, an OP&F Customer Service representative provided you with copies of the enclosed documentation. At that time, you stated that you did not receive the letter that OP&F sent to you on February 11, 2011. That letter was mailed to you at the following address: 7723 Sherridon Drive, Blacklick, Ohio 43004. Our records show that this is currently your mailing address and has been your mailing address since January 14, 2011, when you had contacted OP&F to update your address.
>
> If you wish to participate in DROP, you will need to complete the enclosed *Election to Enroll in DROP* form and submit it to OP&F. If the form is fully and properly completed, your eligibility to participate in DROP will then be determined and you will be notified as to whether or not you meet the plan's eligibility requirements. If you meet these eligibility requirements, the effective date of your DROP election will be the first day of the employer's first payroll period immediately following OP&F's receipt of the *Election to*

> *Enroll in DROP* form, as required by Ohio Revised Code
> Section 742.44.

**(Emphasis sic.)**

{¶ 48} 16. On April 24, 2013, relator filed with OP&F another election form executed by relator on April 23, 2013 and notarized the same day.

{¶ 49} Under Section A of the form, as was the case with the form filed on February 10, 2011, the "Single" box was whited out using white correction fluid and the box was redrawn without a mark to show that the "Single" box is intended to be unmarked.

{¶ 50} The box aside "Divorced" is marked by an X placed over the box just as was the case of the February 10, 2011 form.

{¶ 51} However, the April 24, 2013 form differs substantially from the February 10, 2011 form because there was no use of white correction fluid or other types of alteration at Sections B or C.

{¶ 52} 17. By letter dated April 29, 2013 from OP&F Transaction Specialist, Yvette Kellam, relator was informed:

> OP&F is pleased to verify that your DROP Election Form was received on April 24, 2013.
>
> OP&F will conduct a thorough review of your file to determine your eligibility for the *Deferred Retirement Option Plan (DROP)*. Upon completion of this review, OP&F will send written correspondence to you with your DROP effective date and base pension amount to be credited to DROP. Please note that you must meet the qualifications outlined in the Guide to Deferred Retirement Option Plan (DROP) in order to receive any benefits that you may accumulate during your DROP participation.
>
> Please note that this notice does not guarantee DROP eligibility or participation. All elections will be subject to a determination of eligibility by OP&F based on the terms of the Ohio Revised Code and OP&F's administrative rules. You may cancel your DROP election within 30 days of OP&F's receipt of your Election Form, which is the date referenced in the first sentence of this letter.

{¶ 53} 18.  By letter dated July 18, 2013, OP&F informed relator that she is enrolled in the DROP program effective April 28, 2013.

{¶ 54} 19. On November 21, 2014, relator, Ramona K. Fitzgerald, filed this mandamus action.

Conclusions of Law:

{¶ 55} The issue is whether respondents abused their discretion in refusing to accept the DROP election form relator submitted on February 10, 2011.

{¶ 56} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 57} R.C. 742.43 provides that:  "[t]he board of trustees of the Ohio police and fire pension fund shall establish and administer a deferred retirement option plan."

{¶ 58} R.C. 742.43 further provides that:  "[t]he board shall adopt rules to implement this section and sections 742.44 to 742.446 of the Revised Code."

{¶ 59} On February 10, 2011, the date relator submitted the DROP election form at issue, R.C. 742.44 provided:

> [A]t any time prior to filing an application for retirement under division (C)(1) of section 742.37 of the Revised Code, a member who is eligible to retire under that division may elect to participate in the deferred retirement option plan established under section 742.43 of the Revised Code.
>
> To make an election, an eligible member shall complete and submit to the Ohio police and fire pension fund a form prescribed by the fund.
>
> * * *
>
> The effective date of an election made under this section is the first day of the employer's first payroll period immediately following the board's receipt of the notice of election.

{¶ 60} On February 10, 2011, the date relator submitted the DROP election form at issue, and currently, Ohio Adm.Code 742-4-01, captioned "General DROP Definitions," provides:

(B) A "DROP Participant" shall mean an eligible member who files the election (as hereinafter defined) with OP&F and the election has been fully completed and properly completed by the member.

(C) "OP&F" shall mean the Ohio police and fire pension fund created under Chapter 742. of the Revised Code.

(F) "Election" shall mean the election form that OP&F requires in order for a member to participate in DROP, as such form may be amended or modified from time to time by OP&F. For those elections that have been filed with OP&F, it shall also mean the fully and properly completed required election that is signed by the member.

{¶ 61} Analysis begins with the observation that the April 15, 2013 letter from respondent's general counsel is the final written decision of respondents. Essentially, the letter sets forth the factual findings, the legal authority, and the legal reasoning of respondents in refusing to accept relator's February 10, 2011 election form.

{¶ 62} The April 15, 2013 decision is premised upon R.C. 742.44's requirement that, to make an election, an eligible member "shall complete and submit * * * a form prescribed by the fund." Also, the decision is based upon Ohio Adm.Code 742-4-01(F), which supplements the statute and provides that an election shall mean the "fully and properly completed required election that is signed by the member."

{¶ 63} In the April 15, 2013 decision, the general counsel notes that OP&F staff sent a letter to relator on February 11, 2011 to inform that "your DROP election form had been altered" and that, consequently, a new form must be submitted.

{¶ 64} While the April 15, 2013 general counsel's letter itself fails to explain the alteration, the February 11, 2011 letter explains:

In reviewing your form, we noticed that your selection has been altered. OP&F cannot accept your application because it is incomplete. To avoid any processing delays, please complete the enclosed Election to Enroll in DROP, being careful to avoid crossing out or whiting out your selections.

{¶ 65} Clearly, the February 11, 2011 OP&F letter is correct in observing that the February 10, 2011 election form presents the "whiting out" of initial selections.

{¶ 66} Thus, the general counsel's April 15, 2013 letter, in effect, identifies the "whiting out of your selections" as the alterations that concerned the general counsel and persuaded her to reject the February 10, 2011 election.  Also, the general counsel concluded that the election form was not "fully and properly completed" pursuant to Ohio Adm.Code 742-4-01(F) because of the alterations.

{¶ 67} State retirement systems are creatures of statute and " 'can only act in strict accordance with their enabling schemes.' " *Poliseno v. Mitchell,* 10th Dist. No. 09AP-1001, 2010-Ohio-2615, quoting *Ohio Assn. of Pub. School Emp. v. School Emp. Retirement Sys.,* 10th Dist. No. 04AP-136, 2004-Ohio-7101, ¶ 23.

{¶ 68} Public retirement systems, nonetheless, are entitled to due deference in interpreting their own statutes and rules.  *Poliseno* at ¶ 12, citing *State ex rel. Schaengold v. Pub. Emp. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760 at ¶ 23.

{¶ 69} Here, as indicated by the April 15, 2013 letter that refers to the February 11, 2011 staff letter, the general counsel expressed her concern regarding the alterations on the February 10, 2011 election form submitted by relator.  That concern regarding alterations was, by reference, made more specific in the February 11, 2011 staff letter that instructed that relator prepare another election form "being careful to avoid crossing out or whiting out your selections."

{¶ 70} As earlier noted, the February 10, 2011 election form contained whiteout at three sections of the form.  At Section A, whiteout was used to cover the initial marking of the "Single" box so that the "Divorced" box could be marked instead.

{¶ 71} At Section B, whiteout was used to cover the initial marking of the box aside "I do want to select a payment plan" so that the box aside "I do not want to select a payment plan" could be marked instead.

{¶ 72} At Section C, whiteout was used to cover an initial designation of a beneficiary including that beneficiary's social security number and date of birth such that no beneficiary is designated.

{¶ 73} While not specifically so stated by the general counsel, the multiple use of whiteout to change initial selections at three sections of the form, where those changes present significant substantive changes, creates a legitimate concern that relator may not

have been adequately informed when she prepared the form. Thus, it was well within the discretion of the general counsel to uphold the initial staff determination to refuse acceptance of the February 10, 2011 election form and to inform relator that a new election form must be completed in order for DROP benefits to begin.

{¶ 74} Relator argues that respondent's acceptance of the April 24, 2013 election form is inconsistent with rejection of the February 10, 2011 election form because the April 24, 2013 election form presented the same whiteout alteration at Section A as is found on the February 10, 2011 election form.

{¶ 75} Because the February 10, 2011 election form and the April 24, 2013 form presented very different scenarios, respondents were clearly not inconsistent in accepting the latter election form over the earlier one.

{¶ 76} As earlier noted, Section A as to both forms, presents whiteout over the "Single" box so that the "Divorced" box can be marked as the selection. Apparently, respondents did not find this to be a significant or substantial problem because the latter election form was accepted notwithstanding the use of whiteout at Section A.

{¶ 77} In a sense, one who is "Divorced" but not remarried is "Single" again. Thus, while marking the "Divorced" box was the more accurate selection, the initial marking of the "Single" box was not inaccurate. Significantly, Section A of the election form is provided for member identification. That is, Section A is not used for the applicant's selection of important choices under the DROP program. That is, whether or not to select a payment plan under Section B and whether or not to designate a beneficiary are indeed significant substantive selections not found under Section A. Therefore, it was not inconsistent for respondents to accept the April 24, 2013 election form, and reject the February 10, 2011 election form.

{¶ 78} Asserting that she never received the February 10, 2011 letter informing that her election form was not accepted, relator endeavors to lay fault upon respondents by pointing out that the letter was addressed to Ramona Boyd which was relator's married name prior to her divorce in November 2000.

{¶ 79} As earlier noted, on January 29, 2001, relator completed a written request for OP&F's customer service department on which she indicated that her name is Ramona

K. Fitzgerald. Also, relator listed her address as "7723 Sherridon Trail Drive, Blacklick, Ohio, 43004."

{¶ 80} Also, on January 8, 2001, relator completed the form provided by the City of Columbus, Division of Fire on which she indicated a change in her marital status to "Divorced." On that form, relator also listed the same address as found on the January 29, 2001 document.

{¶ 81} Clearly, OP&F should have been aware on February 11, 2011 that the currently correct name is Ramona K. Fitzgerald and not Ramona Boyd.

{¶ 82} Here, the magistrate notes a discrepancy between the street address listed on the January 8, 2001 and January 29, 2001 documents, and the street address listed on the February 11, 2011 letter, which was : "7723 Sherridon Dr., Blacklick, Ohio, 43004-8178."

{¶ 83} Relator here does not mention the discrepancy between "7723 Sherridon Dr." and "7723 Sherridon Trail Drive."

{¶ 84} Relator's focus here on the name discrepancy on the February 11, 2011 letter is misplaced. Undisputedly, the presumption is the U.S. Postal Service would have delivered the letter to the address presented on the letter's envelope regardless of the name used with the address.

{¶ 85} Relator says she never received the February 11, 2011 letter. The record here strongly suggests that the letter was sent. However, we do not need to determine why the letter was not received as relator asserts. Clearly, relator has failed to show that respondents' staff was at fault for the alleged non-receipt of the February 11, 2011 letter.

{¶ 86} Based upon the foregoing analysis, the magistrate concludes that relator has failed to show that respondents abused their discretion in refusing to accept the DROP election form relator submitted on February 10, 2011.

{¶ 87} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

**Civ.R. 5 3(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**