[Cite as *State ex rel. Barnett v. Comm.*, 2014-Ohio-311.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State of Ohio ex rel.] Michelle Barnett, | : | |
| | : | |
| Relator, | : | |
| | : | No. 13AP-161 |
| v. | : | (REGULAR CALENDAR) |
| The Industrial Commission of Ohio and Aspen Nursing Services, Inc., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on January 30, 2014

*Cox, Koltak, and Gibson, LLP,* and *Peter J. Gibson,* for relator.

*Michael DeWine,* Attorney General, and *Sandra E. Pinkerton,* for respondent The Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Michelle Barnett, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability ("TTD") compensation effective August 1, 2012 based upon a finding that the industrial injury has reached maximum medical improvement ("MMI"). Relator asks us to order the commission to enter an order reinstating TTD compensation.

{¶ 2}  Pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate recommends that this court grant the request for a writ of mandamus.  The commission objects.

{¶ 3}  The commission presents two objections to the magistrate's decisions:  first, that the magistrate erred in finding that the commission relied "exclusively" on Garcia's report; and second, that, by making this mistake, the magistrate incorrectly found Dr. Garcia's report was "premature."  Generally, relator argues that the magistrate failed to acknowledge that the staff hearing officer ("SHO") considered Dr. Garcia's report in light of the subsequent treatment records that showed no functional improvement, and, in so doing, the magistrate failed to consider whether the evidence taken as a whole was some evidence on which the commission could base its decision.  The commission argues its order was based on some evidence as the SHO considered not only Dr. Garcia's report but also subsequent treatment reports.  We will discuss the two objections together.

{¶ 4}  The magistrate determined that Dr. Garcia's report does not provide some evidence upon which the commission could rely to support its finding that relator had reached MMI.  Relying on *State ex rel Sellards v. Indus. Comm.*, 108 Ohio St.3d 306, 2006-Ohio-1058, the magistrate reasoned that Dr. Garcia's April 27, 2012 report was premature, given the commission granted Dr. Altic's C-9 request for a course of treatment approximately one month after Dr. Garcia's report was issued.

{¶ 5}  The commission argues that the magistrate's reliance on *Sellards* is misplaced and notes that, in *Sellards*, the commission's approval of treatment was contemporaneous with its termination of TTD.  The commission further argues the fact that Dr. Garcia was aware of the proposed treatment at the time he opined that MMI had been reached, coupled with the fact that the SHO considered subsequent treatment reports

and concluded there was no functional improvement, distinguishes this case from *Sellards.*

{¶ 6} We find the magistrate did not err. First, the SHO did not state that it relied on the subsequent treatment reports in making it's determination that TTD should be terminated. Second, even if we were to construe the SHO's reference to the subsequent treatment reports to be a statement of reliance, the reports themselves do not contain a medical opinion that MMI had been reached. In other words, the SHO assessed the reports and offered his own opinion that MMI had been reached even with the subsequent treatments, upon which he apparently subsequently relied.

{¶ 7} The SHO stated in his order that he had "reviewed the treatment notes on file regarding the approved physical medicine and trigger point injections the Injured Worker underwent and finds that the notes do not adequately support the contention that either course of treatment resulted in objective evidence of functional improvement in the allowed conditions." He thus concluded "the Staff Hearing Officer finds that Dr. Garcia's report remains probative on the maximum medical improvement issue." (Sept. 27, 2012 SHO order, 2.) In reviewing the subsequent treatment reports, the SHO apparently inferred that the treatment was not working and that relator had indeed reached MMI. Neither the commission nor this court has medical expertise. *State ex rel. Cleveland Browns Football Co., L.L.C. v. Indus. Comm.*, 10th Dist. No. 10AP-564, 2011-Ohio-5656, ¶ 51, citing *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.,* 81 Ohio St.3d 56 (1998). The commission, in effect, invites this court to read the subsequent treatment reports as supporting an opinion that the industrial injury is at MMI, even though the reports contain no such opinion. This court must decline the invitation. Furthermore, we disagree that Dr. Garcia's opinion that relator had reached MMI was premised on his assessment of subsequent treatment. Obviously, Dr. Garcia did not have these records available to him at the time of his April 27, 2012 opinion. Furthermore, although he was aware of the proposed treatment, he was under the

impression that such treatment had been denied. Additionally, Dr. Garcia was not asked to provide an addendum after the treatment was commenced.

{¶ 8} "The commission is free to accept or reject medical opinions of record in determining disability. However, it cannot fashion its own medical opinion from the findings contained in the medical reports such as might be done by a non-examining physician who is asked by the commission to review the medical evidence of record." *State ex rel. Valentine v. Indus. Comm.,* 10th Dist. No. 02AP-579, 2003-Ohio-1784, ¶ 105. *See State ex rel. Wallace v. Indus. Comm,* 57 Ohio St.2d 55, 59 (1979) (The non-examining physician is required to expressly accept all the findings of the examining physician but not the opinion drawn therefrom.). *State ex rel. Blue v. Indus. Comm.,* 79 Ohio St.3d 466 (1997). Here, the SHO reviewed the subsequent treatment reports and fashioned his own medical opinion. The fashioning of such an opinion, to bolster the premature opinion of Dr. Garcia, was not proper. Therefore, we overrule the commission's objections.

{¶ 9} Upon review of the magistrate's decision, an independent review of the record, and due consideration of the commission's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule the commission's objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.

{¶ 10} Accordingly, the requested writ of mandamus is hereby granted, and the commission is ordered to vacate the September 27, 2012 order of its SHO that terminated TTD compensation, and to enter an order reinstating TTD compensation.

*Objections overruled; writ granted.*

SADLER, P.J., and McCORMAC, J., concur.

McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

———————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State of Ohio ex rel.]<br>Michelle Barnett, | : | |
| | : | |
| Relator, | | |
| | : | No. 13AP-161 |
| v. | | |
| | : | (REGULAR CALENDAR) |
| The Industrial Commission<br>of Ohio and Aspen Nursing<br>Services, Inc., | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

### MAGISTRATE'S DECISION

#### Rendered on August 28, 2013

---

*Cox, Koltak, and Gibson, LLP,* and *Peter J. Gibson,* for relator.

*Michael DeWine,* Attorney General, and *Sandra E. Pinkerton,* for respondent The Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 11} In this original action, relator, Michelle Barnett, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability ("TTD") compensation effective August 1, 2012 based upon a finding that the industrial injury has reached maximum medical improvement ("MMI"), and to enter an order reinstating TTD compensation.

Findings of Fact:

{¶ 12} 1. On July 19, 2010, relator injured her neck, back, shoulders and arms while employed as a "caregiver" for respondent Aspen Nursing Services, Inc., a state-fund employer. The injury occurred when relator was lifting a client/resident from a bathtub.

{¶ 13} 2. The industrial claim (No. 10-339188) is allowed for:

Cervical sprain/strain; lumbar sprain/strain; thoracic sprain/strain; bilateral shoulder sprains; cervical disc protrusion at C4-5, C5-6, C6-7, and C7-T1; left cervical radiculopathy.

{¶ 14} 3. The Ohio Bureau of Workers' Compensation ("bureau") began payments of TTD compensation based upon C-84 reports from treating physician Stephen Altic, D.O.

{¶ 15} 4. The record contains a C-84 dated March 27, 2012 on which Dr. Altic certified TTD from March 22, 2012 to an estimated return-to-work date of June 22, 2012 based upon a March 22, 2012 examination. On the C-84, Dr. Altic wrote: "See Narrative from 3/22/12."

{¶ 16} 5. On March 27, 2012, Dr. Altic completed two C-9 requests for medical treatment. Between the two C-9s, Dr. Altic requested authorization for the following:

[Three] Pain management consultation.
[Four] Course of physical medicine to the cervical and lumbar spine three times weekly times six weeks employing ultrasound, massage, hot packs, ice packs, electrical stimulation, and therapeutic exercises for range of motion and strengthening, as well as home exercise instruction.

* * *

[Five] Concomitant with physical medicine treatments, series of trigger point injections to the cervical spine three times weekly times six weeks employing [L]idocaine or Marcaine and sterile saline.
[Six] Consultation with pain management specialist.
[Seven] Consultation with registered and licensed dietician Gregory Avellana at Grandview Family Practice.

{¶ 17}  6. On March 29, 2012, the managed care organization ("MCO") denied all of Dr. Altic's requests except "pain management consult x 1 cervical spine only."

{¶ 18}  7. On April 20, 2012, the bureau mailed an order denying the March 27, 2012 C-9s of Dr. Altic.

{¶ 19}  8. Relator administratively appealed the April 20, 2012 bureau order.

{¶ 20}  9. Following a May 31, 2012 hearing, a district hearing officer ("DHO") issued an order that vacates the bureau's April 20, 2012 order and grants the March 27, 2012 requests of Dr. Altic.  The DHO's order explains:

> The District Hearing officer notes that the pain management consultation was authorized by the managed care organization for the cervical spine. The disputed issues are the physical medicine to the cervical and lumbar spines with concomitant trigger point injections to the cervical spine and a consultation with a dietician.
>
> The District Hearing Officer notes that the Injured Worker was authorized to undergo cervical fusion surgery with Dr. White and the Injured Worker has deferred the surgery to lose weight to increase her chances of a successful surgery. Dr. White agrees with this plan of action. The medical records on file do document an over 50 pound weight gain since the date of injury. The urgent care record from 7/20/2010 noted her weight at 285 pounds and the most recent note from Dr. Altic indicates 343 pounds.
>
> The District Hearing Officer orders that the following treatment be authorized and paid within Bureau of Workers' Compensation rules and regulations: physical medicine to the cervical spine with concomitant trigger point injections three times a week for six weeks; physical medicine to the lumbar spine three times a week for six weeks; and a consultation with a dietician. This order is based on the 3/26/2012 report from Dr. Altic and the 2/3/2012 report from Dr. White. The District Hearing Officer finds that this evidence sufficiently supports that this treatment is medically reasonable and necessary treatment for the allowed conditions.

{¶ 21} 10. The DHO's order of May 31, 2012 was not administratively appealed. Thus, the order is a final commission order.

{¶ 22} 11. Earlier, on April 26, 2012, at the bureau's request, relator was examined by David A. Garcia, D.O. In his five-page narrative report dated April 27, 2012, under the heading "History of Present Illness," Dr. Garcia states:

> She followed up with Dr. White on February 3, 2012, who stated she was approved for a cervical fusion at C5-C6 and C6-C7, but he wanted to hold off on surgery at this time as she had increased her weight which would put her at risk for nonunion. He recommended a referral to Pain Management for at least a trial of cervical epidural steroid injections. She followed up with her physician of record, Dr. Altic, on March 26, 2012, who recommended a pain management consultation PT, trigger point injections and following up with a dietitian to help her lose weight. She stated the pain management consultation, PT, trigger point injections and a followup for a consultation with a dietitian were all denied. She stated on the flip side, she could have continuation of her pain medications. There are no other treatment therapies or treatment regimens being performed.

{¶ 23} Dr. Garcia's report concludes with his answers to six questions posed by the bureau:

> Question 1: In your medical opinion has the injured worker reached a treatment plateau that is static or well stabilized, at which no fundamental, functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitation procedures (maximum medical improvement)? Please explain.
>
> Answer: The injured worker had been told to hold off on surgical intervention until she can lose weight. There are no other interventions planned at this time. The most recent C9 for PT, trigger point injections, pain management consultation was also denied; therefore for the current treatment regimen, she has reached a treatment plateau. When she does reach her weight goal, MMI can be re-evaluated for her to move forward with surgery, but with the current treatment regimen, she has reached MMI.

Question 2: Can the injured worker return to his/her former position of employment? If yes, are there any restrictions or modifications?

Answer: In my medical opinion, the injured worker cannot return to her former position of employment as a caregiver due to her conditions.

Question 3: Please provide a summary of any functional limitations solely due to the allowed physical condition(s) in this claim(s). In other words, please indicate the type of work the injured worker can perform and the supportive rationale for this opinion.

Answer: The functional limitations are outlined on the attached DEP Physician's Report of Work Ability. The injured work is able to lift up to 10 pounds occasionally but otherwise no heavier lifting. She can sit continuously. She can bend, twist, turn, reach below the knees, push, pull, stand and walk frequently. She can squat, kneel and lift above the shoulders occasionally.

Question 4: has the injury/disease reached maximum medical improvement? If not, are there any recommendations for vocational rehabilitation and when should a re-examination be considered?

Answer: Yes. The injured worker has reached MMI with the current treatment regimen. Again, MMI can be reconsidered if she has lost the weight and can proceed with surgery.

Question 5: Is the current treatment necessary and appropriate for the medical condition(s)?

Answer: The current treatment of muscle relaxants and anti-inflammatories is necessary and appropriate.

Question 6: What are the recommendations for any proposed plan of treatment including the expected length of treatment and results?

Answer: I recommend continuation of weight loss to move forward with the planned surgical intervention.

The above analysis is based upon the available information at this time including the history given by the injured

worker, the medical records and tests provided and the physical findings.

{¶ 24} 12. On June 20, 2012, nearly two months after Dr. Garica issued his report, the bureau moved to terminate TTD compensation based upon Dr. Garcia's April 26, 2010 report. In that regard, the bureau issued a referral notice to relator:

The Ohio Bureau of Workers' Compensation (BWC) is referring this claim to the Industrial Commission of Ohio (IC) for consideration of the administrator's request that the temporary total compensation be terminated due to the injured worker reaching maximum medical improvement.

This recommendation is based on:

4/27/2012 IME by Dr. Garcia that finds that the IW has reached a level of MMI with her physical conditions. The IW has been allowed for surgery, which is on hold until she can lose weight, to increase her chance of a successful recovery. He also find that she can return to modified duty work.

The administrator asks that this IW be found at MMI for her work related conditions.

{¶ 25} 14. Following an August 1, 2012 hearing, a DHO issued an order granting the bureau's June 20, 2012 motion. The DHO's order explains:

The Bureau of Workers' Compensation's request to terminate payment of temporary total disability compensation in this claim is granted. The District Hearing Officer finds that the Injured Worker has reached maximum medical improvement (as defined in Ohio Administrative Code Section 4121-3-32) for the allowed conditions in this claim. Ongoing temporary total disability compensation is hereby ordered to be paid only through the date of today's hearing. Any temporary total disability compensation paid after the date of today's hearing is hereby ordered to be recouped pursuant to the non-fraud provisions of Ohio Revised Code Section 4123.511(K).

This order is based on Dr. Garcia's 04/27/2012 report. The District Hearing Officer also notes that, due to the Injured Worker's weight, the Injured Worker's surgery has been

postponed (to an undetermined future date, if not indefinitely) and the Injured Worker at this time is simply undergoing conservative treatment.

{¶ 26} 14. Relator administratively appealed the DHO's order of August 1, 2012.

{¶ 27} 15. Following a September 27, 2012 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order is "modified." The SHO's order explains:

It is the order of the Staff Hearing Officer that the Bureau of Workers' Compensation's Motion filed 06/20/2012 is granted to the extent of this order.

The Staff Hearing Officer affirms the finding that the allowed conditions of the claim have reached maximum medical improvement, as defined in Ohio Adm. Code 4121-3-32(A)(1), based on the report from Dr. Garcia dated 04/02/2012 [sic] persuasively so indicating. As such, the Staff Hearing Officer finds that in his order dated 08/01/2012, the District Hearing Officer properly terminated the payment of temporary total disability compensation effective the date of his hearing, based on the maximum medical improvement finding and the decision in State ex rel. Russell v. Indus. Comm., 83 Ohio St.3d 516, 696 N.E.2d 1069 (1998).

It is true that subsequent to the date of Dr. Garcia's examination of the Injured Worker, requests for a course of physical medicine, trigger point injections, and a consultation with a dietician have been approved, the latter with the purpose of assisting the Injured Worker in losing weight prior to her recommended surgery. The Injured Worker testified that as of today's date, the consultation with a dietician has not yet taken place. The Staff Hearing Officer reviewed the treatment notes on file regarding the approved physical medicine and trigger point injections the Injured Worker underwent and finds that the notes do not adequately support the contention that either course of treatment resulted in objective evidence of functional improvement in the allowed conditions. As such, the Staff Hearing Officer finds that Dr. Garcia's report remains probative on the maximum medical improvement issue.

{¶ 28} 16. On October 25, 2012, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 27, 2012.

{¶ 29} 17. On February 28, 2013, relator, Michelle Barnett, filed this mandamus action.

Conclusions of Law:

{¶ 30} The issue is whether the April 27, 2012 report of Dr. Garcia, upon which the commission exclusively relied, provides some evidence to support its finding that the industrial injury is at MMI.

{¶ 31} Finding that Dr. Garcia's report does not provide some evidence upon which the commission can rely to support its finding that the industrial injury is at MMI, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 32} Here, the parties argue *State ex rel. Sellards v. Indus. Comm.*, 108 Ohio St.3d 306, 2006-Ohio-1058. Relator argues that *Sellards* supports the issuance of a writ of mandamus. The commission argues to the contrary.

{¶ 33} In *Sellards*, the commission relied upon the report of psychiatrist Dr. Allen B. Levy to support its finding that the psychiatric condition of William E. Sellards, Jr. ("Sellards") had reached MMI. The *Sellards* court found that Dr. Levy's report was premature and thus did not provide some evidence supporting the commission's decision to terminate TTD compensation on MMI grounds.

{¶ 34} In *Sellards*, treating psychiatrist, J.T. Spare, submitted a C-9 treatment plan on October 17, 2002. The commission approved the plan on October 22, 2002.

{¶ 35} Coincidentally, also on October 22, 2002, Sellards was examined by Dr. Levy. After the examination and a thorough review of the medical records (which did not include Dr. Spare's treatment plan), Dr. Levy concluded that the psychiatric condition had reached MMI.

{¶ 36} Also, Dr. Spare wrote on November 26, 2002 that his treatment of Sellards had been negatively impacted by Sellards' inability to

get his prescriptions filled at the pharmacy he goes to. Later, on December 24, 2002, the bureau admitted that an error had occurred regarding prescription payment and, as of that date, had been corrected.

{¶ 37} The *Sellards* court held that Dr. Levy's MMI opinion "was premature based on the commission's contemporaneous approval of Dr. Spare's treatment program." *Sellards* at ¶ 20.

{¶ 38} Turning to the instant case, as of the date of Dr. Garcia's April 27, 2012 report, the MCO had denied the course of treatment set forth in Dr. Altic's C-9s with the exception of a "[p]ain management consult x 1 cervical spine only." Also, as of the date of Dr. Garcia's report, the administrator had issued an order on April 20, 2012 that upheld the MCO denials. In his report, Dr. Garcia acknowledges the status of Dr. Altic's C-9s by stating that relator stated that the C-9 requests "were all denied." (Actually, Dr. Garcia's acknowledgment of the status of Dr. Altic's C-9s was incorrect, in part, because the MCO had authorized a pain management consult for the cervical spine only.)

{¶ 39} About one month after Dr. Garcia issued his report, the status of Dr. Altic's recommended course of treatment dramatically changed because the DHO's order of May 31, 2012 granted Dr. Altic's C-9 request for a course of treatment.

{¶ 40} Despite that Dr. Garcia believed at the time of his report that the C-9 requests had been denied and that no course of treatment was in place, the commission relied upon Dr. Garcia's report to support an MMI finding and termination of TTD compensation.

{¶ 41} Given this scenario, the issue here is whether, as a matter of law, Dr. Garcia's April 27, 2012 report is premature and thus not probative on the issue of MMI. If Dr. Garcia's report is premature, it cannot constitute some evidence to support the commission's determination of TTD compensation.

{¶ 42}  In his April 27, 2012 report, Dr. Garcia states that, other than the continuation of her pain medications, "[t]here are no other treatment therapies or treatment regimens being performed."

{¶ 43}  In his April 27, 2012 report, in answer to question one, Dr. Garcia notes that relator has been told to delay surgery until she loses weight.  Based on his understanding that Dr. Altic's treatment regimen has been denied, Dr. Garcia opines:  "but with the current treatment regimen, she has reached MMI."

{¶ 44}  In his April 27, 2012 report, in answer to question four, Dr. Garcia opines:   "[t]he injured worker has reached MMI with the current treatment regimen."

{¶ 45}  In his April 27, 2012 report, Dr. Garcia repeatedly makes clear that his MMI opinion is premised, at least in part, upon the absence of an approved course of treatment and particularly the denial of Dr. Altic's proposed treatment plan.

{¶ 46}  Significantly, Dr. Altic's March 27, 2012 C-9 treatment plan predates the bureau's request that relator be examined by Dr. Garcia.  It appears that Dr. Garcia's examination of relator was prompted by Dr. Altic's C-9 request.  Had the examination been delayed about one month until Dr. Altic's C-9 request had been finally resolved, Dr. Garcia would presumably have had the correct information regarding the final status of Dr. Altic's treatment plan.  But the bureau apparently chose to pursue Dr. Garcia's examination of relator prior to a final administrative decision on Dr. Altic's C-9 request.  Moreover, the bureau did not request an addendum from Dr. Garcia following the May 31, 2012 DHO's order.

{¶ 47}  In *Sellards*, unaware the commission had approved Dr. Spare's treatment plan as of the date of his examination, Dr. Levy's conclusion that the psychiatric condition had reached MMI was held to be premature.  Here, while Dr. Garcia was aware that Dr. Altic had requested approval of a treatment plan, his belief that the plan had been denied ultimately proved to be wrong.

{¶ 48} Based upon the above analysis, the magistrate finds that *Sellards* supports the conclusion that Dr. Garcia's report was premature and thus fails to provide some evidence upon which the commission can rely.

{¶ 49} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the September 27, 2012 order of its SHO that terminated TTD compensation, and to enter an order reinstating TTD compensation.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).