[Cite as *State ex rel. Keck v. Indus. Comm.*, 2022-Ohio-2782.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert B. Keck, | : | |
| Relator, | : | |
| v. | : | No. 20AP-314 |
| The Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on August 11, 2022

**On brief:** *Jon Goodman Law, LLC,* and *Jon Goodman,* for relator.

**On brief:** *Dave Yost*, Attorney General, and *Douglas R. Unver,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

MENTEL, J.

{¶ 1} Relator, Robert B. Keck, brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating his temporary total disability ("TTD") compensation on the grounds that Mr. Keck had achieved maximum medical improvement ("MMI") for his allowed conditions.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. As reflected in the facts given in the magistrate's decision, Mr. Keck was injured on January 6, 2010, from a fall while working as a police officer for the City of Columbus. His claim was allowed for the following conditions: contusion of left elbow; contusion of back; concussion with loss of consciousness for 30

minutes or less; post-concussion syndrome; and traumatic brain injury. After several years of treatment that the magistrate's decision summarizes in detail, the Ohio Bureau of Workers' Compensation ("BWC") filed a motion to terminate Mr. Keck's TTD on October 30, 2017. Following a hearing on December 4, 2017, a district hearing officer ("DHO") issued an order terminating the benefits because Mr. Keck's allowed conditions had reached MMI, relying on an October 20, 2017 report by Bienvenido Ortega, M.D. Mr. Keck appealed the order and after a hearing held on January 10, 2018, a staff hearing officer ("SHO") issued an order upholding the termination of TTD. Mr. Keck filed a mandamus action on June 11, 2020, seeking a writ compelling the commission to vacate its orders and to reinstate the benefits because the commission's orders were not based upon "some evidence," as required by law.

{¶ 3} The magistrate has rendered a decision and recommendation that includes findings of fact and conclusions of law. In relevant part, the magistrate concluded that:

> Dr. Ortega's report, which is based entirely upon Dr. Ortega's observation that relator had taken retirement from his position as a police officer, cannot support termination of TTD in this case. The magistrate particularly notes that the question of whether an individual is fit or unfit to return to a former position of employment does not determine whether the allowed conditions that impair the claimant's ability to return to work are subject to improvement through further treatment and passage of time.
>
> * * *
>
> Dr. Ortega's report contains only the briefest recitation of two medical record items without analyzing the conclusions contained therein, ignores the rest of relator's extensive medical history, and never addresses the * * * definition of MMI [as set forth in the Ohio Administrative Code]. The magistrate further notes that the commission has not relied upon the concept of voluntary abandonment in this case and, therefore, relator's retirement from his former employment is not otherwise a factor that would support [termination of] TTD.
>
> * * *
>
> Dr. Ortega's report contains no analysis or recitation of the benefits or improvements to be expected from further treatment. Dr. Ortega only repeatedly refers to the fact of

> relator's recent retirement. In contrast, the voluminous other medical records and reports submitted as evidence here repeatedly refer to the benefits to be gained by relator particularly with respect to his vision problems. * * * While the commission was free to disregard this evidence [of "ongoing vision therapy" and "modifications of relator's pharmaceutical regiment [*sic*]"], there was no contrary evidence in the record at the time of the SHO decision.
>
> * * *
>
> Relator argues extensively that Dr. Ortega's report should not be relied upon because it is inconsistent. The magistrate finds, to the contrary, that Dr. Ortega's report cannot be relied upon because it is in fact consistently inadequate and supplies no evidence to support the commission's decision.

(Mag.'s Decision at 10-12.)

{¶ 4} Because "the commission has a clear legal duty to rely on some evidence in support of its decision to terminate TTD in this matter based on a finding of MMI, and there is no evidence to that effect," the magistrate has concluded that "the commission's order constituted an abuse of discretion." *Id.* at 12. Consequently, the magistrate recommends that this court grant Mr. Keck's request to issue a writ ordering the commission to vacate its order.

{¶ 5} The commission has filed objections to the magistrate's decision. Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund of Ohio,* 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consol. Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982); *State ex rel. Fitzgerald v. Bd. of Trustees of Ohio Police & Fire Pension Fund,* 10th Dist. No. 14AP-968, 2015-Ohio-5079, ¶ 7. "A clear legal right exists if the commission "abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 6} This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986); *State ex rel. Barnett v. Indus. Comm.,* 10th Dist. No. 14AP-628, 2015-Ohio-3898, ¶ 9. The "some evidence" standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33 (1992).

{¶ 7} The commission's first objection is that the magistrate's finding that Dr. Ortega's report was based entirely on Mr. Keck having retired is a "factually incorrect" statement:

> Dr. Ortega did not base his report entirely upon the fact that Keck had retired. The DHO determined that Dr. Ortega's report * * * was legally sufficient. The DHO noted the fact that Keck had already completed vision therapy (C-9 of 5/18/16) that was to include glasses and vision therapy to adjust to them per [two reports of treating eye doctors]. Specifically, the DHO determined that those reports supported Dr. Ortega's opinion.
>
> * * *
>
> The SHO found that Dr. Ortega did not reach his conclusion of maximum medical improvement solely based upon Keck's retirement in 2015. In response to Question 1 in his report, Dr. Ortega states that based on the definition of MMI above, solely taking into consideration the allowed conditions in this claim, the injured worker has reached a level of maximum medical improvement. This is contrary to the Magistrate's statement that Dr. Ortega never references the definition of MMI.

(Apr. 30, 2021 Objs. at 3-4.) (Citations omitted.)

{¶ 8} Having reviewed the entirety of Dr. Ortega's report, including the portions not quoted in the magistrate's decision, we find no indication that Dr. Ortega based his opinion on anything other than either 1) Mr. Keck's retirement or 2) Mr. Keck's "statement" that he retired because "he was not able to work properly" due to ongoing symptoms. (Aug. 18, 2020 Stip. at 84.) Thus, we disagree with the commission's insistence that the magistrate was "factually incorrect" when describing Dr. Ortega's report.

{¶ 9}   The report is in the form of a questionnaire.  It begins with the following instruction:  "Please answer the following questions, providing an opinion to within a reasonable degree of medical probability.  Acknowledge and document the allowed and disallowed conditions, and your acceptance of those conditions."  (Stip. at 84.)  After providing the definition of MMI set forth in Section 4121-3-32(A)(1) of the Ohio Administrative Code, the questionnaire asks that the examining doctor "specifically" address the following question: "Based on the definition of MMI above, solely taking into consideration the allowed conditions in this claim, has the injured worker reached a level of maximum medical improvement?  Please provide the basis and support for your opinion as to whether the injured worker has or has not reached a level of MMI."

{¶ 10} After conclusory stating that Mr. Keck "has reached a level of maximum medical improvement" based on the Section 4121-3-32(A)(1) definition, Dr. Ortega stated: "The basis [for so concluding] includes the injured worker's own statement that he was not able to work properly in the same environment due to bright light that bothered him, memory lapses, intermittent confusion, periods of intense headaches and dizziness.  Because of all of these, the injured worker has retired from his prior employment."  (Stip. at 84.)  In spite of the questionnaire's plea for "basis and support," Dr. Ortega provided no discussion of the specific allowed conditions of Mr. Keck's claim or the treatment plateaus the conditions reached to explain MMI.  The sole "basis" cited by Dr. Ortega for his conclusion that MMI had been reached is Mr. Keck's "own statement" that because his ongoing symptoms prevented him from working, Mr. Keck had therefore retired.

{¶ 11} The remainder of Dr. Ortega's report further bolsters the conclusion that Mr. Keck's retirement was the only basis for concluding that he had reached MMI.  The second question asked Dr. Ortega to "indicate the specific date on which the injured worker reached [MMI] and provide an explanation for your opinion with regard to that specific date." (Stip. at 85.)  Dr. Ortega responded only: "The injured worker provided the date of retirement as March 25, 2015." *Id.*  Without the requested explanation, the only inference is that the fact of retirement provides the sole explanation for the conclusion that Mr. Keck's allowed conditions had reached MMI.

{¶ 12} The same inference arises from Dr. Ortega's response to the third question, which asks: "Please discuss how prior, current, and proposed treatment requests impact

your opinion on whether or not the injured worker has reached a level of MMI." The doctor's response: "From the injured worker's own account, the extensive medical treatment he received failed to allow him to return to full-time work in his previous position of employment." Again, Dr. Ortega relies only on Mr. Keck's statement that he retired because his condition did not improve. There is no discussion of the treatment history or its impact on Dr. Ortega's "opinion," as requested.

{¶ 13} The fifth question in the report asks: "Based solely on the allowed conditions in this claim, do the objective and/or subjective findings in the file support ongoing temporary total disability (i.e., the injured worker is unable to return to the former position of employment and has not reached MMI)?" Once again, Dr. Ortega fails to support his conclusion as requested, stating only that TTD should not continue "because the injured worker states having retired from the former position of employment." We agree with the magistrate's observation that "the question of whether an individual is fit or unfit to return to a former position of employment does not determine whether the allowed conditions that impair the claimant's ability to return to work are subject to improvement through further treatment and the passage of time." (Mag.'s Decision at 11.) Yet Dr. Ortega cites no other fact other than Mr. Keck's retirement as the basis for his purported "medical opinion" that Mr. Keck's allowed conditions had reached MMI. Mr. Keck states that the "Commission fails to explain how there was more than one basis for Dr. Ortega's MMI opinions when he himself identified only a single basis." (May 5, 2021 Memo. in Opp. to Objs. at 5.) We agree.

{¶ 14} The commission also points to the DHO's statement that two records of vision treatment and a form indicating that Mr. Keck had "already completed vision therapy" by May 18, 2016 were "found to support Dr. Ortega." (Dec. 4, 2017 DHO order, Stip. at 105.) However, Dr. Ortega's report never connects any of this treatment or these records to the conclusion that MMI was reached. "The commission is free to accept or reject medical opinions of record in determining disability. However, it cannot fashion its own medical opinion from the findings contained in the medical reports such as might be done by a non-examining physician who is asked by the commission to review the medical evidence of record." *State ex rel. Valentine v. Indus. Comm.*, 10th Dist. No. 02AP-579, 2003-Ohio-1784, ¶ 105. The cited basis for terminating TTD under Ohio Administrative Code 4121-3-

32 is that "[t]he employee's treating physician finds the employee has reached maximum medical improvement." But none of these additional records referenced by the DHO contained an opinion from a treating physician that a claimed condition had reached MMI. (*See* Dec. 31, 2015 report from Michael Barley, O.D., Stip. at 30; Jan. 28, 2016 report from Joseph Rosenthal, M.D., Stip. at 34; and May 18, 2016 C-9 Form, Stip. at 39.). Without some discussion from Dr. Ortega himself as to how these treatments supported his conclusion, we cannot conclude that they supported his report. *See State ex rel. Barnett v. Indus. Comm. of Ohio*, 10th Dist. No. 13AP-161, 2014-Ohio-311, ¶ 7 ("The commission, in effect, invites this court to read the subsequent treatment reports as supporting an opinion that the industrial injury is at MMI, even though the reports contain no such opinion. This court must decline the invitation.").

{¶ 15} Following our independent review, pursuant to Civ.R. 53, we find that the magistrate correctly determined that the order of the commission must be vacated because it is not supported by some evidence. The magistrate correctly explained that the commission could not rely on the report of Dr. Ortega. We find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, the objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant the request for a writ of mandamus.

*Objections overruled; writ granted.*

DORRIAN and BEATTY BLUNT, JJ., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert B. Keck, | : | |
| Relator, | : | |
| v. | : | No. 20AP-314 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 21, 2021

*Jon Goodman Law, LLC,* and *Jon H. Goodman*, for relator.

*Dave Yost,* Attorney General, and *Douglas R. Unver,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 16} Relator, Robert B. Keck, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order terminating relator's award of temporary total disability ("TTD") compensation. The stated reason in the commission's termination order is that, based upon a review of medical records, relator's allowed conditions have reached maximum medical improvement ("MMI").

Findings of Fact:

{¶ 17} 1. Relator suffered injuries from a fall in the course and scope of his employment with respondent, the city of Columbus, as a police officer on January 6, 2010. (Stip. at 1.)

{¶ 18} 2. Relator's claim was allowed for contusion left elbow; contusion back; concussion with loss of consciousness for 30 minutes or less; post-concussion syndrome; traumatic brain injury. (Stip. at 119.)

{¶ 19} 3. The Ohio Bureau of Workers' Compensation ("BWC") mailed its determination on January 13, 2010 granting relator's application for TTD compensation. (Stip. at 3-6.)

{¶ 20} 4. A medical evaluation by Cynthia Taylor, D.O., dated November 11, 2011, assessed continuing "cerebral impairments characterized by frequent headaches, dizziness, photophobia, and motion sickness," which combined with back pain, resulted in a 15 percent whole person impairment. (Stip. at 7.)

{¶ 21} 5. Relator's primary treating physician for the related conditions, Charles B. May, D.O., submitted a report dated June 11, 2014 detailing his recent treatment history for relator beginning on June 10, 2014. Dr. May concluded:

> [Relator] has had inconsistent treatment for this injury but has remained symptomatic and learned to live and work with his symptoms. It certainly appears that he is suffering from a postconcussion syndrome which would be directly and proximately related to the 01/06/2010 work injury.

(Stip. at 10.) Dr. May's assessment was based on relator's complaints of continuing light sensitivity, grogginess, motion sickness, and dizziness. (Stip. at 9.) Dr. May noted that relator was still working as a Columbus Police Officer but assigned to an office position.

{¶ 22} 6. On October 3, 2014, a commission staff hearing officer ("SHO") issued an order granting relator's request for additional medical services reimbursement related to his neurological condition. (Stip. at 11-12.)

{¶ 23} 7. On December 15, 2014, Robert J. Mazo, D.O., produced his report based upon a neurological consultation and assessment of relator at the request of treating physician Paul Heban, M.D. Dr. Mazo noted the following results:

> A neurological exam was performed today. He is alert, fluent, and oriented to person, place, and time. He follows simple commands well. He remembers 5/5 objects immediately and after 30 minutes. He does have some minor tenderness at the lumbosacral spine and posterior cervical paraspinal muscle area, but no overt spasms noted. He had negative straight leg raising. Negative Spurling's.

Negative Adson's maneuver bilaterally. Carotid pulses +2 bilaterally. No overt head, neck, orbital, or supraclavicular bruits heard bilaterally. Negative glabellar, snout, and jaw jerk response. Cranial nerves II to XII are intact and the discs are flat. No gross focal, cerebellar, sensory, or motor deficits could be found with no muscle atrophy or fasciculations noted in the extremities. He ambulates and tandems well. He has a negative Romberg's test and no arm drift could be noted. He can stand on his toes and heels without assistance. Deep tendon reflexes were normoreflexive and symmetrical. No pathologic reflexes or clonus could be found today.

RECOMMENDATION: Per history and clinically, the patient apparently has had head trauma with a cerebral concussion with postconcussive symptomatology. He is 75% better according to him, but he has stabilized. This problem occurred in January 2010 and one would have expected over this time period as much recovery as possible, but it should be noted that the patient has not had full care. What I would suggest is getting neuropsychological studies at OSU with perhaps a consultation with Dr. Mysiw at the Trauma Clinic. Also, PT and OT should see this patient for evaluation, if not already done so. Also, a VNG should be done again, if not already done so, to see if there are any vestibular problems regarding his dizziness and a trial of meclizine should be considered. As far as his headaches are concerned, perhaps low-dose Neurontin 100 mg twice a day may be of value to decrease his headache frequency and duration.

(Stip. at 13-14.)

{¶ 24} 8. Karen Gade-Pulido, M.D., produced a report dated July 14, 2015 at the request of the Ohio Police and Fire Pension Fund. The report details other injuries preceding relator's fall in 2010. After examination of relator and review of his medical records, Dr. Gade-Pulido summarized impairment for retirement fund disability purposes and including all injuries including those preceding relator's fall underlying the current TTD award, as 25 percent whole person impairment. (Stip. at 20.)

{¶ 25} 9. Dr. May completed a BWC form Medco-14 ("Physician's Report of Work Ability") on November 10, 2015 certifying relator's continued inability to work and need for follow-up assessment and treatment by a traumatic brain injury specialist. (Stip. at 22-23.)

Relator then applied for an award of TTD beginning June 15, 2015 and continuing indefinitely thereafter. (Stip. at 24.)

{¶ 26} 10. A physician review at the request of BWC by Brian Higgins, D.O., concluded that "[w]ithin a degree of medical probability and based on the documentation available, the requested period of temporary total disability starting 6/19/2015 [sic] is supported based on the allowed conditions in this claim, and subjective/objective findings within the available documentation." (Stip. at 27.)

{¶ 27} 11. BWC granted TTD commencing on June 15, 2015 by corrected order issued December 14, 2015. (Stip. at 28.)

{¶ 28} 12. Michael Earley, O.D., treated relator and issued reports dated December 30, 2015, April 6, 2016, and March 8, 2017. (Stip. at 30, 37, 60.) Dr. Earley addressed relator's continuing complaints of intermittent vision problems including an inability to track and focus visually. In his final report, Dr. Earley reported improvement with new bifocal glasses on all aspects of relator's complaints, including light sensitivity. Relator continued to report to Dr. Earley of "dizziness, vertigo, balance issues, depth perception issues all stable and remaining from [traumatic brain injury] in 1/20/10." (Stip. at 61.)

{¶ 29} 13. Joseph A. Rosenthal, M.D., produced reports on September 14, 2016 and February 1, 2017 after referral by Dr. May for physical therapy and rehabilitation. Dr. Rosenthal's September 14, 2016 report noted as follows:

> Since the last visit, he reports:
>
> Cognition: Unchanged, "still sucks." He has not seen any change with Buproprion XL. [S]hort term memory loss: stable, misplace items: stable, loses focus easily. Prior NP testing showed issues with overall memory, higher level executive function, very brief attention, vision, and irritability/low frustration, he has completed SLP which he noticed some improvement.
>
> Irritability: remains improved with the Buproprion.
>
> Headache: Remains improved, but made worse with bright light. Only rarely having bad headaches that last hours/days. Prior to this week, headaches had been much better. This week, he has headaches most days. Takes Advil pm. Headaches would get worse with therapies, especially if they

were back to back. He cannot pinpoint a location on his head where he has headaches. He has had headaches in the past that are throbbing. Occasionally headaches are sharp in nature. Sometimes has nausea, blurry vision. Continues to work with optometry. He continues on the amitriptyline. Higher doses have not helped previously. He has tried the sumatriptan for bad headaches and they do help. He takes the sumatriptan periodically.

He continues to work with optometry for oculomotor dysfunction and photosensitivity. He was provided a prescription for new glasses (but not approved) and recommended further therapy with OT. He has not been able to get the new glasses (can't find ones that he likes that fit him).

* * *

Overall better, but still with cognitive complaints, headaches, and vision issues. Headaches still present, but improved for the most part (except for the photosensitivity). Optometry has made recommendations, but awaiting BWC approval.

Plan:
[One] Optometry has requested more vision therapy and new glasses. He wants to resume OT vision therapy and the optometrist is in agreement. However, he has not been able to get glasses ordered yet, so the therapy has not started yet.
[Two] Continue amitriptyline 50mg at bedtime for headache prophlaxsis and to improve sleep. Tolerating this dose.
[Three] Continue Imitrex pm.
[Four] Continue Wellbutrin X-RAY 150mg daily for irritability. Has not helped with cognition.

I will schedule a follow-up visit in 12 weeks.

(Stip. at 42-44.)

{¶ 30} Dr. Rosenthal's February 1, 2017 report noted similar observations with minor improvements. (Stip. at 53.)

{¶ 31} 14. Gordon Zellers, M.D., examined relator and reviewed his records and produced a report for BWC dated October 30, 2016. Dr. Zellers concluded that relator was unable to resume work, that this was related solely to the allowed condition of traumatic

brain injury, and that any ongoing problems with relator's elbow or back were unrelated by this time to his 2010 fall. Dr. Zellers further concluded:

> **ANSWER:** Clinically, as noted above, the patient's mechanism of injury on January 6, 2010 consisted of a slip and fall which was responsible for his suffering a traumatic brain injury/postconcussion syndrome. Records reflect that his persistent neuropsychiatric complaints are being attributed to his aforementioned allowed conditions. As he is still symptomatic as it relates to his allowed conditions and is awaiting approved therapeutic activities which could potentially result in a decrease in the severity of his claim related complaints, evidence supports the conclusion that his industrial claim has not satisfied the definition of having reached a level of maximum medical improvement.

(Stip. at 50.)

{¶ 32} 15. Dr. May submitted continuing Medco-14 assessments of relator's inability to return to work on February 1, May 4, August 2, and October 24, 2017, and January 31, 2018. (Stip. at 58, 67, 73, 92, 127.)

{¶ 33} 16. On February 1, 2017, Dr. May produced a report noting continuing loss of balance, dizziness, and short-term memory issues. Dr. May noted relator's continued treatment for vision issues and improvements with new glasses obtained from The Ohio State University Optometry Department (Dr. Rosenthal). (Stip. at 56.)

{¶ 34} 17. Physician's Assistant Courtney Roland, associated with Dr. May's office, produced reports on May 3 and August 2, 2017 noting continued headaches, photo sensitivity, trouble focusing, and short-term memory loss, the last noted as worsening. The recommendation was to continue follow-up with Dr. Rosenthal for traumatic brain injury treatment. (Stip. at 63, 69.)

{¶ 35} 18. A referral for vocational rehabilitation was closed as "non feasible due to (still seeking tx to achieve medical stability and POR is not in support per Medco 14 dated 08/02/17." (Stip. at 75.)

{¶ 36} 19. Susan Burpee, certified nurse practitioner, produced a report after consultation on October 17, 2017 at the Physical Medicine and Rehabilitation Clinic of The Ohio State University's Wexner Medical Center noting continued recommendation of working with the optometry department and various medications. (Stip. at 78.)

{¶ 37} 20. On behalf of the employer, relator's medical file was reviewed by Bienvenido Ortega, M.D., a neurologist and surgeon who prepared a report dated October 20, 2017. Dr. Ortega concluded that relator had reached MMI with respect to the allowed conditions:

> **MEDICAL RECORDS REVIEW:**
>
> This claimant's medical file was reviewed by this examiner.
>
> - 7/28/15 Neuropsychological report Mary Hill, Ph.D. – recommended a neuropsychological evaluation to assess the severity of his cognitive symptoms and to determine the effect of any psychological symptoms on his cognitive functioning.
> - 3/18/16 IME report Kenneth W. Chapman, M.D. – opined not MMI and no additional diagnostic or treatment services were recommended.
>
> * * *
>
> **[One] Based on the definition of MMI above, solely taking into consideration the allowed conditions in this claim, has the injured worker reached a level of maximum medical improvement? Please provide the basis and support for your opinion as to whether the injured worker has or has not reached a level of MMI.**
>
> Based on the definition of MMI above, solely taking into consideration the allowed conditions in this claim, the injured worker has reached a level of maximum medical improvement. The basis includes the injured worker's own statement that he was not able to work properly in the same environment due to bright light that bothered him, memory lapses, intermittent confusion, periods of intense headaches and dizziness. Because of all of these, the injured worker has retired from his prior employment.
>
> **[Two] If you opined that the injured worker has reached MMI, please indicate the specific date on which the injured worker reached that status and provide an explanation for your opinion with regard to that specific date.**

The injured worker provided the date of retirement as March 25, 2015.

**[Three] Please discuss how prior, current, and proposed treatment requests impact your opinion on whether or not the injured worker has reached a level of MMI.**

From the injured worker's own account, the extensive medical treatment he received failed to allow him to return to full-time work in his previous position of employment.

\* \* \*

**[Five] Based solely on the allowed conditions in this claim, do the objective and/or subjective findings in the file support ongoing temporary total disability (i.e., the injured worker is unable to return to the former position of employment and has not reached MMI)?**

Based solely on the allowed conditions in this claim, the objective and/or subjective findings do not support ongoing temporary total disability because the injured worker states having retired from the former position of employment.

\* \* \*

**[Eight] In order to verify and document the last day worked for the employer of record, please review this information in the record and discuss verbally with the injured worker when you meet. Please indicate this information.**

The injured worker states that he retired from his occupation on March 25, 2015.

\* \* \*

**[Eleven] Are there additional diagnostic/treatment services consistent with nationally accepted treatment guidelines that should be considered that would be reasonably expected to improve the treatment outcomes of the allowed condition(s)? If so, what are the diagnostic/treatments that should be considered and what may be the expected outcome in**

**most cases if provided? Please provide rationale such as treatment guidelines, position papers, or standards of medical care to support your opinion.**

No additional diagnostic/treatment services are appropriate at this time 7 years from the time of the relatively minor closed head injury.

**[Twelve] Is vocational rehabilitation appropriate from a medical perspective? If yes, please specify services recommended.**

No. The injured worker has retired from his occupation.

(Stip. at 83-86.)

{¶ 38}  21.  Andrew Toole, O.D., produced a report dated October 24, 2017 detailing relator's ongoing vision issues, recommending additional corrective lenses, and further recommending 36 sessions of vision therapy.  (Stip. at 90.)

{¶ 39}  22.  Occupational Therapist Anna Tipton produced a report dated November 21, 2017 assessing relator's prospects for improved ability to resume employment and concluding, after review of relator's various impairments and conditions, that "patient will benefit from skilled occupational therapy to address these impairments, occupational performance limitations, and participation restrictions and has excellent rehab potential to achieve therapy goals."  (Stip. at 97.)

{¶ 40}  23.  BWC filed a motion to terminate TTD on October 30, 2017.  A commission district hearing officer ("DHO") heard the matter on December 4, 2017 and issued a report mailed December 6, 2017 ordering termination of TTD.  The DHO's order relies exclusively on Dr. Ortega's report and finding of MMI.  The DHO further noted that Drs. Rosenthal and Earley had recommended vision therapy and new glasses, which had been furnished, supporting Dr. Ortega's conclusion of MMI.  (Stip. at 105.)

{¶ 41}  24.  Arthur L. Hughes, M.D., conducted an independent medical evaluation of relator on behalf of the Ohio Police and Fire Pension Fund on December 6, 2017 and produced a report dated December 11, 2017, concluding that relator had persistent symptoms of dizziness and multiple manifestations of post-concussion syndrome, and was not physically or mentally capable of returning to employment.  (Stip. at 109-15.)

{¶ 42} 25. Occupational therapist Tipton produced a report dated December 7, 2017 recommending further therapeutic activities to aid return to work and outlining a plan for further visits. (Stip. at 107-08.)

{¶ 43} 26. Relator appealed the DHO's order and the matter was heard before an SHO on January 10, 2018. The SHO rejected relator's argument that Dr. Ortega's report was legally flawed and could not be relied upon. The SHO reviewed relator's ongoing treatment and evidence after issuance of the previous DHO order and concluded that TTD should be terminated as a result of relator reaching MMI. "In reaching this conclusion, the Staff Hearing Officer has considered the presentation concerning the Injured Worker's ongoing treatment requests, but also particularly notes the fact that this is a claim which has been actively treated with a date of injury now over eight years ago." (Stip. at 119.)

{¶ 44} 27. Relator appealed from the SHO's order, and the commission refused the appeal by order dated February 16, 2018 and refused reconsideration by order dated March 20, 2018. (Stip. at 135, 141.)

{¶ 45} 28. Relator filed his complaint in mandamus with this court on June 11, 2020.

Discussion and Conclusions of Law:

{¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 47} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant resumes work; (2) the claimant's treating physician provides a written statement that claimant is able to return to the former position of employment or comparable work; (3) work within the capabilities of the claimant is made available by the employer or another employer; or (4) the claimant reaches maximum medical improvement.  R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982); *State ex rel. Cugini v. Timken Co.*, 10th Dist. No. 18AP-261, 2019-Ohio-3013, ¶ 25.

{¶ 48} Relator argues that the commission's decision terminating TTD constitutes an abuse of discretion because it is based solely upon the report of Dr. Ortega, and that report is so flawed, incomplete, internally inconsistent, and misdirected in its assessment of the evidence that it cannot constitute "some evidence" to support the commission's determination.  For the reasons that follow, the magistrate agrees that Dr. Ortega's report, which is based entirely upon Dr. Ortega's observation that relator had taken retirement from his position as a police officer, cannot support termination of TTD in this case.  The magistrate particularly notes that the question of whether an individual is fit or unfit to return to a former position of employment does not determine whether the allowed conditions that impair the claimant's ability to return to work are subject to improvement through further treatment and passage of time.

{¶ 49} Ohio Adm.Code 4121-3-32(A)(1) defines maximum medical improvement as follows:

> (A) The following provisions shall apply to all claims where the date of injury or the date of disability in occupational disease claims accrued on or after August 22, 1986. The following definitions shall be applicable to this rule:
>
> (1) "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.

{¶ 50} Dr. Ortega's report contains only the briefest recitation of two medical record items without analyzing the conclusions contained therein, ignores the rest of relator's extensive medical history, and never addresses the above definition of MMI. The magistrate further notes that the commission has not relied upon the concept of voluntary abandonment in this case and, therefore, relator's retirement from his former employment is not otherwise a factor that would support TTD.

{¶ 51} "[W]hen medical treatments can provide no further functional or physiological improvement, the claimant has reached MMI and cannot receive further temporary total disability compensation, regardless of whether further medical treatment is necessary." *State ex rel. Navistar Internatl. Transp. Corp. v. Indus. Comm.,* 10th Dist. No. 03AP-809, 2004-Ohio-4218, ¶ 45 (Magistrate's Decision Appended and Adopted). Dr. Ortega's report contains no analysis or recitation of the benefits or improvements to be expected from further treatment. Dr. Ortega only repeatedly refers to the fact of relator's recent retirement. In contrast, the voluminous other medical records and reports submitted as evidence here repeatedly refer to the benefits to be gained by relator particularly with respect to his vision problems. One of the last reports from Dr. Toole emphasizes the need for ongoing vision therapy to help relator adapt to his new corrective lenses. Other physicians repeatedly addressed modifications of relator's pharmaceutical regiment. While the commission was free to disregard this evidence, there was no contrary evidence in the record at the time of the SHO decision. Absent some supporting evidence, the commission could not fashion its own medical opinion that contrary facts existed regarding the plateau level of relator's allowed conditions. *See, generally, State ex rel. Barnett v. Indus. Comm.,* 10th Dist. No. 13AP-161, 2014-Ohio-311.

{¶ 52} As late as February 1, 2017, Dr. Rosenthal discussed relator's need for adapted bifocal lenses to maximize his improvement and adjustments to relator's headache medications, while noting that additional vision therapy visits were necessary. (Stip. at 53-55.) Likewise, on March 8, 2017, a recommendation for further additional vision therapy was made. On October 17, 2017, relator was seen at the Physical Medicine and Rehabilitation Clinic of The Ohio State University's Wexner Medical Center and the need for additional vision therapy was reiterated and reimbursement requested and approved. (Stip. at 78-81.) In an office note dated November 30, 2017, Dr. Rosenthal discussed

improving symptoms and the need for continued vision therapy. (Stip. at 102-04.) Relator argues extensively that Dr. Ortega's report should not be relied upon because it is inconsistent. The magistrate finds, to the contrary, that Dr. Ortega's report cannot be relied upon because it is in fact consistently inadequate and supplies no evidence to support the commission's decision.

{¶ 53} Because the commission has a clear legal duty to rely on some evidence in support of its decision to terminate TTD in this matter based on a finding of MMI, and there is no evidence to that effect, the commission's order constituted an abuse of discretion. *State ex rel. Lopez v. Indus. Comm.,* 69 Ohio St.3d 445 (1994). It is therefore the decision and recommendation of the magistrate that a requested writ issue ordering the commission to vacate its order terminating TTD based upon a finding that relator had reached MMI in his allowed conditions.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).